The State of Iowa, ex rel. Lockwood and Scholfield, v. Kirkwood.

Affirmed.

THE STATE OF IOWA, *ex rel.* LOCKWOOD AND SCHOLFIELD, v. KIRKWOOD, Governor.

1. RAILROAD LANDS. The Governor of the State of Iowa will not be compelled by *mandamus* to issue any certificate to the Cedar Rapids and Missouri River Railroad Company, which will enable said corporation to acquire any title to any of the lands embraced in the grant of lands to the State of Iowa, for railroad purposes, by act of Congress of May 15th, 1856, prior to a compliance, by said company, with the conditions expressed in §§ 6 and 7 of chapter 37 of the Laws of 1860.

*Appeal from Polk District Court.*

WEDNESDAY, DECEMBER 3.

THE act of Congress, approved May 15, 1856, " making a grant of lands to the State of Iowa, in alternate sections, to aid in the construction of certain railroads in said State," contains these provisions :

1. "For the purpose of aiding in the construction of a railroad from Lyons City northwesterly to a point of intersection with the main line of the Iowa Central Air Line Railroad, near Maquoketa, thence on said main line running as near as practicable to the forty-second parallel across said State of Iowa to the Mississippi river," there was granted to said State, every alternate section of land ; designated by odd numbers, for six sections in width on each side of· said road.

2. These lands were to be held by the State " for the use and purpose aforesaid," and were to be "exclusively applied in the construction " of said road, and " disposed of only as the work progressed," and for no other purpose whatsoever.

3. Said lands were declared subject to the disposal of the Legislature for the purpose aforesaid and no other.

4. The manner of disposition was declared to be as follows : " A quantity of land, not exceeding one hundred and twenty sections, and included within a continuous length of twenty miles of said road may be sold, and when the Governor of said State shall certify to Secretary of the Interior that any twenty continuous miles of said road is completed, then another quantity of land hereby granted, not to exceed one hundred and twenty sections," may be sold, " and so, from time to time," until said road is completed ; and if said road is " not completed within ten years no further sale shall be made, and the lands unsold shall revert to the United States."

5. By an act of the Legislature, approved July 14, 1856, the lands, rights, powers and privileges conferred upon the State by said act of Congress, were accepted upon the terms, conditions and restrictions therein contained. The fourth section declared that the lands, &c., granted and conferred to aid in the construction of a railroad from Lyons City north-westerly, &c., were "disposed of, granted and conferred upon the Iowa Central Air Line Railroad Company, a body corporate, created and existing under the laws of the State of Iowa."

6. On the 17th of March, 1860, the Legislature, reciting that the Iowa Central Air Line Railroad Company had failed to perform the conditions of said acts of Congress, and this State, "absolutely and entirely resumed" all the "rights, lands, interests, powers and privileges" conferred by said act of July 14, 1856.

7. And then by chapter 37, Laws 1860, these rights, lands and privileges were conferred upon "The Cedar Rapids and Missouri River Railroad Company" upon certain conditions, restrictions and limitations therein contained. By the third section it is provided that if the company shall accept the grant upon the conditions named, ("which acceptance shall appear by an express writing, under the seal of the corporation, with the signature of its president and secretary, and shall be filed in the office of the Secretary of the State of Iowa within ninety days after the approval of this act by the Governor,") it shall take the same with the conditions imposed, and incumbrances specified in this act. The sixth section makes it incumbent upon the company to build, on or before the 1st of January, 1861, of a grade named, a railroad "from Pearl street in Lyons City to a point of intersection with the Chicago, Iowa and Nebraska Railroad, within the limits of Clinton City; and it is hereby expressly provided that no lands shall be certified by the Governor (to said Cedar Rapids and Missouri River Company) until they have com-

plied with the requirements of said section." The seventh section reads thus : " Said company shall not commence to build or construct said road at any point further west from the Mississippi river than the town of Marion, in Linn county, Iowa, and the Governor of the State shall not certify any of the lands herein transferred to said company, until that portion of the road between said town of Marion and the city of Cedar Rapids, together with so much more of said road as to make in the aggregate at least twenty miles, shall be completed, equipped and operated by said company or its successors."

From the petition of the relators and the facts agreed upon, it is shown that two sections, of twenty miles each, of said road, from Cedar Rapids to Otter Creek station, in Tama county, were completed on or about the first of December, 1861, of which satisfactory evidence was furnished the Governor. The company, however, did not comply, in whole or in part, with the provisions of sections six and seven, in building a road from Lyons to Clinton and from Cedar Rapids to Marion. The Governor was in due form requested to certify the fact of the completion of each of these sections to the Secretary of the Interior. This he refused, for the reason that the company had failed to comply with sections six and seven of the act conferring the lands. The relators asked for a writ of mandamus, commanding the Governor " without delay to cause a certificate of the completion of each twenty miles of said road to be made and filed in the office of the Secretary of the Interior, as provided for in section four of the act of Congress," approved May 15, 1856. On hearing, the writ was refused, and the relators appeal.

*Henderson* and *Boardman* for the appellant.

*C. C. Nourse* (Att'y Gen.) for appellee.

WRIGHT, J. — Whether the Legislature had the power to resume this grant and confer it upon the company represented by the relators (so far as the rights of the Iowa Central Air Line Railroad Company are concerned), is a question remotely suggested in the argument, but as we deem it immaterial, from the view taken of the merits of the cause, it is not now determined. And the same may be said as to the question whether the Governor has such a discretion in the premises as that the judicial power cannot control its exercise. We also remark that we pass these questions for the reason that the determination of one of them at least (the latter) would (if determined adversely to appellants) leave unsettled the construction of the act of the Legislature under which they claim, and undecided a question important to the interest of the State as well as the company. And as to the first question, it involves issues vitally important to the "Air Line Company," not a party to this proceeding, and prudence as well as a due regard for the rights of the unrepresented corporation, would dictate that it should be passed until (if ever) it legitimately arises.

Had the relators the right to demand of the Governor the certificate claimed? or, in other words, without complying with §§ 6 and 7 of the act of 1860, could the company rightfully demand the certificate claimed? Or, still again, are these provisions (so far as the relators, or the rights of the company represented by them, are concerned) in conflict with the act of Congress?

And, in the first place, we dispose of a preliminary question, suggested by counsel, that relators have a right to demand a certificate that the two sections, of twenty miles each, have been completed, though they may not have the right to require a certificate for the lands to the railroad company. Or this proposition may be stated thus: that the State law contemplates the withholding of the title to the land, while the act of Congress relates to the proving

of a fact which exists independently of the land and all title thereto. We remark that the certificate of the Governor was intended to accomplish a practical purpose, and that was to enable the State to sell, from time to time, a quantity of land not exceeding one hundred and twenty sections for the completion of each twenty miles of road. And the Governor could not be required to give any other certificate. He might, at his option, certify that any company had completed and equipped twenty miles of railway. Thus he might certify that this company had completed so many miles on the forty-third or any other parallel, while the acts of Congress, and the legislature of this State, required that it should be constructed, as near as practicable, on the forty-second. But he could not be compelled to make this certificate. The courts of the State could only compel him to do an act which was contemplated by the law, and necessary to acquire the lands granted by the act of Congress. If the company accepting the provisions of the act of the Legislature, have not complied with its terms, they have no right to demand a certificate that they have done anything else, upon which to base an order from the Secretary of Interior to sell a portion of the lands.

But the inquiry still remains, were relators, or the company, entitled to this or any certificate from the Governor, without complying with §§ 6 and 7 of the act under which they claim? Assuming that the act of Congress vested the legal title in these lands in the State, in trust, for the purpose of aiding the construction of a railroad, subject to the right of reversion, and that they could not be applied to the construction of a road not contemplated by the act, or inconsistent with the terms of the grant, the argument, so for as the rights of the relators are concerned, would not be materially advanced. For if the conditions imposed upon the State are *subsequent*, so that a failure to comply with them would defeat the title, so those in the act of the

legislature, as applied to the company, are precedent, and if not complied with, they fail to *acquire* a title, or a right to it. And truly is it said by appellants' counsel, that in the former case it is a question between the General and State Governments; and in the latter, between the State and the company. The Federal Government does not know or have anything to do with the railroad company as such, and all the rights of the company are derived from the State, under the State law. They had no special or vested right in these lands, or right to them, beyond any other company or individual. It was competent for the State to construct the road, and retain the lands for disposition to settlers or individuals, upon such terms and at such times as might be deemed advantageous. Or the State might contract with any company or individual for the construction of the road, giving the lands as a bonus, or to aid in such construction. If, by such contract, more was required of the company than was contemplated by the act of Congress, the State might thereby violate the trust reposed, but we are not aware of any principle upon which the other contracting party (the company) could claim an advantage therefrom, and insist that they were, as a consequence, excused for the breach of their agreement. The company, by its president and secretary, under the seal of the corporation, filed, in the office of the Secretary of State, within the time required, its acceptance of the grant, upon the conditions named in the law. By this law it is expressly provided, that the company should build a road from Lyons to Clinton City, before the 1st of December, 1861. Another provision is, that a portion of the road should be constructed from Cedar Rapids to Marion. And the Governor is expressly prohibited from certifying any of the lands until each of these conditions are complied with. Grant that the State had no power, in view of its duty to the general government, to annex these conditions. Admit that the

grant was not made by Congress to aid in the construction of these side roads, or plugs, as they are called.  Concede that the lands are to be applied exclusively to the construction of a road from "Lyons city, northwesterly, &c., as near as practicable, on the forty-second parallel."  We say, all these propositions admitted, and the relators are not benefited.  Suppose the act of the Legislature had made the grant upon condition that the company should construct a road from Muscatine to Sioux city.  Could the company accept the same, build the road on the forty-seeond parallel, and then claim the lands?  If they could, then they could make such claim, and have a right to the lands, by doing the work, as well without as with an act of the Legislature. And in this view, the grant to the State would amount to nothing, for the company first doing the work, on its own motion, and without any authority from the State, would be entitled to the lands.  The correct position, however, is, that the lands belong to the State, that no company has the exclusive right to them or can acquire the same, without legislative sanction.  After the Legislature has acted, and proposed the terms, it is entirely at the option of the company to accept the terms, or join in the contract, or let it alone.  When they have joined, however, they are not at liberty to do something else than their contract provides for, and then claim that, as the State has departed from its duty, they are thereby released from fulfilling theirs.

The doctrine that a law may be void in part, and valid in other respects, has nothing to do with this case.  The act of the Legislature and the acceptance of its terms by the company, constituted a contract between the parties. If the State had no power to make it, the company cannot enforce it, and least of all by failing to comply with its conditions.  If the State had the power to make it, then the express conditions with which the Company were to comply, to entitle them to the certificate claimed, must have

been observed. It is admitted that these were not complied with, and the Governor, therefore, properly withheld the certificate.

Affirmed.