# STATE EX REL, IRVINE V. BROOKS, GOVERNOR.

Governor—Ministerial Duties—Certificate of Election—Mandamus—Jurisdiction—Office and Officer—State Officers—State Treasurer—Term of Office—Election to Fill a Vacancy—Construction of Constitutional Provisions.

1. Where a duty enjoined upon the Governor is not political or executive, and does not involve the exercise of discretion in the manner of its performance, but is purely ministerial, and one that might as well have been imposed upon any other officer, the performance of the duty by the Governor may be controlled by mandamus.

2. Whether a duty devolving upon a public officer is one involving discretion or not is to be determined by the nature of the act to be performed, and not by the office of the performer.

3. Discretion in the manner of the performance of an act by an officer arises when the act may be performed in one of two or more ways either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed; but when a positive duty is enjoined, and there is but one way in which it can be performed lawfully, then there is no discretion.

4. When the statute, without prescribing its form, requires a certificate of election to be given to the person receiving the highest number of votes cast for an office, the certificate, which is to become the evidence of the title to the office, and the right to hold the same, should contain the title of the office, the name of the person elected, and the term to which he has been elected.

5. The duty enjoined upon the Governor to give to one elected to a State office, as shown by the certificate of the State board of canvassers, a certificate of election, is purely ministerial, involving no discretion, and is subject to control by mandamus.

6. In controlling by mandamus the performance of the duty enjoined upon the Governor to issue a proper certificate of election to one elected to a State office, as shown by the certificate of the State board of canvassers, the court does not attempt to perform the act, but simply interprets the provisions of the constitution and laws under which the Governor is required to act; that is the peculiar province of the judiciary, and its interpretation of the law is as binding upon the executive as upon any other citizen.

7. The Jurisdiction of the court does not depend upon its physical ability to enforce its judgments, but upon the right to hear and determine the matter in controversy.

8. That the Governor might refuse to comply with the order of the court in requiring the performance of a ministerial duty by mandamus, and, as commander in chief of the military forces of the State, could successfully resist the enforcement of the writ, do not constitute a valid objection to the jurisdiction of the court in such a case, for the court will not assume that the Governor might knowingly violate the Constitution and his oath of office, which require him to see that the laws are faithfully executed.

9. Where the Governor has given to one elected to the office of State Treasurer a certificate of his election to said office for the unexpired term of his predecessor who had resigned, and refused, upon demand, to give a certificate of his election to said office for the full term of four years; *Held*, that if the term of office of the one so elected should be held to be the full term of four years, the court would have jurisdiction by mandamus to require the issuance of a certificate showing the election to have been for such full term, and in such case, upon proper application, the writ should issue.

10. Where the time of the commencement and termination of an office, as well as its duration, are definitely fixed by constitutional or statutory enactment, and provision is made for filling vacancies therein by appointment or election, but without any provision as to the duration or authority of a person so appointed or elected, such person is entitled to serve for the remainder of the unexpired term. But where the term of an elective office is fixed by the Constitution or statute, but without any time being established for its beginning or ending, a person elected to the office will be entitled to hold for the period established as the full term thereof, whether he was elected upon the happening of a casual vacancy or at the expiration of a full term.

11. Where the Constitution, which had been framed and adopted · before the admission of the State, provided that the official term of various State officers should be four years, that all State officers elected at a general election should enter upon their respective duties on the first Monday in January next following the date of their election, and that all State officers elected at the first election held under the Constitution should hold office for the full term next ensuing such election, in addition to the period intervening between the date of their qualification and the commencement of such full term. *Held,* that the Constitution not only fixed the length of the official term of such State officers, but also definitely fixed the date of the commencement and end of the term—that the State having been admitted in July, 1890, the full term of the State officers elected at the first State election held in that year commenced on the first Monday in January, 1891, and ended on the first Monday in January, 1895, when a new term commenced, and so on; one term ending and a new term commencing every four years from the first Monday in January, 1891.

12. The interpretation placed upon constitutional provisions by the first State legislature, in reference to the term of of-

fice of State officers, and the commencement and ending thereof, while not conclusive, is entitled to much weight in determining the true meaning of the language used in the Constitution.

13. Where one, who had been regularly elected for a full term of four years to the office of State Treasurer, resigned during the first year of his term, and another was appointed by the Governor to fill the vacancy so caused until the next general election, and, at such election, the same person was elected to the office, he was elected for the unexpired term of his predecessor who had resigned; and he was not entitled to a certificate of election for any longer period.

[Decided March 26, 1906.]        (84 Pac. 488.)

Original proceeding in mandamus.

Heard on demurrer to petition and alternative writ. The facts are stated in the opinion.

*W. E. Mullen,* Attorney General, for the respondent. (In support of the demurrer.)

The jurisdiction of this court in mandamus as to all state officers, as declared by Section 3 of Article 5 of the Constitution, is limited to state officers other than the Governor, and even then to a control of merely ministerial duties. The courts are without jurisdiction to control executive or political duties of the Governor. (State v. Burdick, 3 Wyo., 588.) The signing and delivery of the election certificate demanded by relator under the facts as averred in relator's petition, is not a ministerial duty, nor any duty imposed by law upon defendant. (Flourney v. Jeffersonville, 17 Ind., 169; State v. Nash, 66 O. St., 612; 2 Bouvier's L. Dict., 181.) It is to be presumed that the Board of Canvassers did their duty, and that the Governor did his duty in issuing a certificate for the unexpired term. (State ex rel. v. Barber et al., 4 Wyo., 68.) The acting Governor, who preceded the defendant in office, having given relator a certificate for the unexpired term only, the defendant was bound to exercise care and judgment in responding to the demand upon

him for a second and different certificate.   It was not a plain
duty enjoined by law.   Had he acceded to the demand,
would he not have assumed judicial powers?   (Sharpless v.
Buckles (Kan.), 70 Pac., 886; Hawkins v. Governor, 1
Ark., 570.)

The signing and delivery of an election certificate is not a
ministerial duty imposed by law upon the executive and it
is not a duty subject to control by mandamus.   (Hawkins
v. Governor, 1 Ark., 570; State v. Drew (Gov.), 17 Fla.,
67; Low v. Towns (Gov.), 8 Ga., 360; State v. Warmouth
(Gov.), 22 La. Ann., 1; Dennett v. Petitioner, 32 Me., 508;
Miles v. Bradford (Gov.), 22 Md., 170; The People v.
Governor, 29 Mich., 320; State v. Governor, 25 N. J., 331;
People v. Bissell, 19 Ill., 229; Mauran v. Smith, 8 R. I.,
192; Rice v. Governor, 19 Minn., 103; 67 Tenn. (8 Baxt.),
490; State v. Stone, 120 Mo., 428; Hovey (Gov.) v. Shuch,
11 L. R. A., 763; 8 L. R. A., 188; 3 L. R. A., 58.)

Where the constitution provides that the three depar-
ments of government shall be distinct and that neither
shall interfere with the duties of the others, the action will
not lie to compel the performance of a ministerial duty
by the Governor.   (State ex rel. v. Stone (Mo.), 23 L. R.
A., 194; High Ex. Leg. Rem., Sec. 118; Wood on Man-
damus, 123, 124; Merrill on Mandamus, Sec. 97.)

. The certificate of election which relator demands, being in
any event merely *prima facie* evidence of the right of the
holder to hold, occupy, and exercise the powers of the of-
fice, and to receive the emoluments and profits thereof dur-
ing the term therein specified, is merely an incident to the
real issue presented by the writ.   The action brought to
compel the issuance and delivery of an election certificate
is therefore, only a means of securing a judicial interpreta-
tion of the law affecting the tenure of relator's term of of-
fice, and as such presents a grave question for the considera-
tion of the court.   It is not the intention of counsel for de-
fendant to impose on the patience of the court, by contend-
ing that the Legislature has power to either shorten, or ex-

tend, a term of office that is fixed by the organic law. That it cannot do so, is a principle too elementary and well settled to permit of discussion. The constitution is a limitation of power, and not a grant, and it is our contention that the framers of the constitution, in omitting to provide for the filling of unexpired terms of state officers, intended that the power should be exercised by the Legislature. While the Legislature, in making a provision for the filling of vacancies at general elections, has not expressly provided that the person elected to fill a vacancy shall hold the office for the unexpired term of the person who has vacated the same, yet our constitution and laws on the subject, being in *pari-materia*, should be read and construed together, and when this is done it will be found that their undoubted policy and intention is in support of the doctrine, that a person elected to fill a vacancy in an office is entitled to hold the same only for the unexpired term of the prior incumbent. The office of State Treasurer is a constitutional office. The Treasurer is one of five state officers, which the constitution directs shall be elected at the time and places of choosing members of the Legislature, and all shall severally hold their office at the seat of the government for the term of four years. (Const., Secs. 3, 11, Art. IV.) The only express provision found in the constitution for filling a vacancy is that providing for a temporary succession in the office of Governor. (Const., Sec. 6, Art. IV.) And for the Governor to fill vacancies by appointment when no other mode is provided by the constitution, or law. (Const., Sec. 7, Art. IV.)

Section 20, Art. XXI, the "Schedule," provided that state officers elected at the first election were to hold their offices for the full term next ensuing such election in addition to the period intervening between the date of their qualification and the commencement of such full term, and Section 5 of Art. VI under "Elections," after providing that general elections should occur in each even numbered year, requires all state and county officers elected at such general election, to enter upon their respective duties on the first

Monday in January next following the date of their election, or as soon thereafter as may be possible. Now, having provided for four year terms for state officers in the first instance, with specific provision that the terms of all state officers elected at the first election should be for the full term next ensuing after such first election, in addition to the period intervening between the date of their qualification and the commencement of such full term, and further providing that such state officers should assume their duties on a specific date after such election, we think the intention of the constitution to be plain, and that the conclusion logically follows, that all state officers should be elected at a uniform time, and hold for a uniform period as a class, and that when a vacancy shall occur, such vacancy should be considered in the term and not a vacancy in the office. (Burks v. Huston, 77 Va., 4; Jameson v. Hudson, 82 Va., 279.)

If the Legislature saw fit to provide for the filling of vacancies at special elections it would have the unquestioned power to do so, leaving no power in the Governor to fill vacancies by appointment. (*In re* Moore, 4 Wyo., 106; State ex rel. Grant, 12 Wyo., 17.)

But it may be said that the statute is silent as to whether a person elected to fill a vacancy in the middle of a term, holds for the unexpired portion of the term, which would be two years, or for the full constitutional term of four years. We grant that the statute has not expressly so provided, but Sections 198 and 199 R. S. enacted at the first session of the State Legislature provide that in the year 1894 and at the general election held every four years thereafter there shall be elected a Governor, Secretary of State, Auditor, Treasurer and Superintendent of Public Instruction; for the election of state officers at general elections to fill vacancies, and also to fill vacancies occurring in the office of the Justice of the Supreme Court. These sections, far from being in conflict with the constitution, are really in perfect harmony with its provisions, with reference to the terms of

state officers, for the reason that they provide for a continuation of the four year terms, that were filled by persons elected in 1890 at the first election held after the adoption of the constitution. The time for electing state officers, including a State Treasurer, will, under the terms of Section 198, *supra,* occur in the year 1906, and the person elected State Treasurer in that year will, if the statute is good and valid, be elected to occupy and hold the office for the constitutional four year term. Thus by a fair and reasonable inference the Legislature has provided that persons elected in the middle of a term to fill vacancies in state offices hold only for the unexpired portion of the term.

The decisions to be found on the question as to the tenure of the term of persons elected to fill vacancies, that is whether for the unexpired portion of the term, or for the full constitutional term, are based on constitutional provisions and statutes differing in so many respects that it seems almost impossible to reconcile them. The cases decided in favor of the extreme rule, namely, that the incumbent holds for a full term, we believe will be found to be based on the proposition that the Legislature is without power to shorten or extend the term of an office which has been fixed by the constitution, unless the constitution has either by express provision or fair implication delegated the power to the Legislature to provide for the filling of unexpired terms of office by election. We admit that numerous decisions of this kind may be found, which would seem, unless carefully examined and distinguished, to fix the weight of authority in support of the contention of relator. One of the strongest cases and one most frequently cited in support of the doctrine that a person elected to fill a vacancy should be entitled to hold for the full constitutional term, comes from Virginia, *Ex Parte* Meredith, 33 Gratt, 119, decided in 1880. The opinion cites with approval many of the earlier cases that support the same doctrine, such as, Brewer v. Davis, 9 Hump., 208; Banton v. Willson, 4 Tex., 400; Hughes v. Buckingham, 5 S. M.,

632; People v. Waite, 9 Wend., 58; Marshall v. Harwood, 5 M. D., 423; Sousbury v. Middleton, 11 Md., 297; State v. McClintock, Id., 245; Crowell v. Lambert, 9 Minn., 283; Keys v. Mason, 3 Sneeds, R., 6; People v. Burbank, 12 Cal., 378; Womack v. Holloway, 2 Al., 31; People v. Constabt, 11 Wend., 132; Jameson v. Hudson, 82 Va., 279; Burkes v. Huston, 77 Va., 1.

The Supreme Court of Indiana has held that where a statute fixes a time for the election of a class of officers, persons elected in the middle of a term hold only for the unexpired portion of the regular term. (Parcel v. State, 110 Ind., 122; State v. Chapin, 110 Ind., 272.) The same rule is followed in the State of Pennsylvania. (Brooke v. Commonwealth, 86 Pa. St., 163), and in Maine. (Op. of Justices, 64 Me., 599.) The case of State v. Foster, 36 Kan., 504, holds that a person elected to fill a vacancy holds for the unexpired term.

We think the fact that Sec. 20 of the "Schedule" having fixed the time for the commencement of terms of state officers, and that Sec. 11, Art. IV., having fixed the length of terms for state officers, and the Legislature at Sec. 198, R. S., having provided a time for the election of state officers, all being considered together will be found to be in perfect harmony, leaving no apparent conflict between the constitution and the statutes, and that the conclusion is irresistible, that the terms of state officers were intended to follow in succession, and that relator holds only for the unexpired portion of the term of Henry G. Hay, resigned. (People v. LeFever, 40 Pac. (Colo.), 882; Hale v. Bischoff, 36 Pac. (Kan.), 752.) The Legislature has power to provide for the filling of vacancies. (State v. Sorrels, 15 Ark., 663; Smith v. Halfacker, 6 How. (Miss.), 598; McCrary on Elections, Sec. 357.)

Another proposition that we believe should be carefully considered in the disposition of this case, is that by reason of the proclamation issued to the voters of the various counties of the state before the election holden in Novem-

ber, 1904, the people were given to understand, that they were to vote for a candidate for State Treasurer, to fill an unexpired term, which unexpired term was well known by the public generally to be for two years. It is a well settled principle of the election laws that voters must be given a fair opportunity to express their choice by ballot at the polls, and that the preliminary steps taken before an election must be such that the people shall not be misled. (State ex rel. v. Secy. of State, 11 Wyo., 16.)

We also desire to direct the court's attention to the provision found in Sec. 11 of Art. IV of the constitution to the effect that no person shall be eligible for the office of Treasurer for four years after the expiration of the term for which he was elected. The averments of the petition filed by relator show that he assumed the office of State Treasurer under the appointment made by the Governor in September, 1903. He accordingly held the office of Treasurer from that time until January 1, 1905, at which time he alleges, his four year term commenced. We think it was the intention of the framers of the constitution that the office of State Treasurer should not be held by one person for more than four years, at least without an intervening period of four years before it could be held by the same person for a second term.

*Gibson Clark* and *John W. Lacey*, for the relator. (In opposition to the demurrer.)

Is it beyond the power of this court to direct the Governor to perform an act required of him by law, purely ministerial in character, and which he has through some ill advice refused to perform? We are aware of the conflict in authorities upon this question. Counsel has cited cases from fourteen states. Counsel is in error as to the conclusions to be drawn from the decisions taken as a whole in three of the states mentioned, to-wit: Louisiana, Maryland and Indiana. The State of Louisiana has given its voice in favor of the proposition that mandamus will lie against the Governor as to ministerial duties. (State v. Nicholls, 7 So.,

738; State v. Board (La.), 8 So., 577.) Maryland has likewise given its clear decision in favor of the rule that mandamus will lie against the Governor. (Magruder v. Swann, 25 Md., 173; Brooks v. Widdicombe, 39 Md., 401; Groome v. Gwinn, 43 Md., 572.)

The decisions in Indiana are to the same effect. (Governor v. Nelson, 6 Ind., 496; Baker v. Kirk, 33 Ind., 517; Gray v. State, 72 Ind., 567.)

In addition to the three states above cited, a growing list of courts holds to the same doctrine that the Governor is not clothed with arbitrary power to violate the law in doing or refusing to do ministerial duties directly contrary to the mandates of law. (Marbury v. Madison, 1 Cranch, 170; Land Co. v. Rouett, 31 Am. St., 284 & note; Hartranft's App., 85 Pa., 433; U. S. v. Blaine, 139 U. S., 306; Chumesaro v. Potts, 2 Mont., 242; State v. Chase, 5 O. St., 529; State v. Nash (O.), 64 N. E., 558; Middleton v. Low, 30 Cal., 596; Harpending v. Haight, 39 Cal., 189; Stuart v. Haight, 39 Cal., 87; R. R. Co. v. Moore, 36 Ala., 371; Greenwood &c. Co. v. Routt, 17 Colo., 156; Martin v. Ingham, 38 Kan., 641; State v. St. John, 21 Kan., 591; State v. Thayer, 31 Neb., 82; State v. Savage (Neb.), 90 N. W., 898; State v. Blandel, 4 Nev., 241; State v. Adams, 19 Nev., 370; Cotton v. Ellis, 7 Jones' Law (N. C.), 545; Traynor v. Governor (Ky.), 74 S. W., 1105.)

Were there no decisions of the courts in favor of the plaintiff other than those in the three states of Nebraska, Kansas and Ohio, the rule adopted here would be found to be that the Governor is amenable to the writ of mandamus as to purely ministerial duties. The section of our statute defining mandamus is taken from the Ohio code and is the same as is contained in the codes of Kansas and Nebraska. (Rev. Stat. Wyo., 1899, Sec. 4194.)

Not only inferior tribunals but any "corporation, board or person" may be commanded to perform any act "which the law specially enjoins as a duty resulting from an office, trust or station." Again the constitution confers jurisdic-

tion upon the Supreme Court in mandamus as to all state officers without exception. (Art. V, Sec. 3.)

The Governor's duty here involved is ministerial. A ministerial act is "one which a person performs under a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or exercise of his own judgment upon the propriety of the act being done. (Flourney v. Jeffersonville, 17 Ind., 174; Gray v. State 72 Ind., 567; Mississippi v. Johnson, 4 Wall., 475; State v. Nash (O.), 64 N. E. 558.)

The particular act here in question, the issuing of a commission, when the election of an officer is decided by the canvassing board or the proper authority, is held by a number of courts to be a ministerial duty and within the rule which gives to the courts jurisdiction to command the execution of a ministerial act. (Governor v. Nelson, 6 Ind., 496; Baker v. Kirk, 33 Ind., 517; Magruder v. Swann, 25 Md., 173; Groome v. Gwinn, 43 Md., 572.) It is for the courts, not the Governor, to construe the law. (Wolfe v. McCarell, 76 Va., 880; State v. Hoglan (O.), 60 N. E., 627.) The canvassing board having filed the certificate required by law (R. S., Sec. 351), there is no discretion in the performance of the duty imposed on the Governor.

It is apparently conceded by the brief on behalf of the defendant that the overwhelming weight of authority is to the effect that the term of the plaintiff is the full constitutional four year term, and not limited to the unexpired term of his predecessor. And counsel cited the following cases supporting that doctrine. (Brower v. Davis, 9 Hump., 208; Banton v. Willson, 4 Tex., 400; Hughes v. Buckingham, 5 S. & M., 632; People v. Waite, 9 Wend., 58; Marshall v. Harwood, 5 Md., 423; Sousbury v. Middleton, 11 Md., 297; State v. McClintock, Id., 245; Crowell v. Lambert, 9 Minn., 283; Keys v. Mason, 3 Sneeds R., 6; People v. Burbank, 12 Cal., 378; Womack v. Holloway, 2 Ala., 31; People v. Constaht, 11 Wend., 132.)

There is, as we believe, no case upon the matter as presented by our constitution which holds with the defendant

in the controversy here. It is contended, however, that the cases of Burke v. Hinton, 77 Va., 1, and Jameson v. Hudson, 82 Va., 279, support the contention of the defendant. As we understand it the sole ground for the decision in the case in 77 Va., which is followed by that in 82, is the peculiar phraseology of the Virginia Constitution together with the peculiar history of the question as it occurred in that state, including the journals of the constitutional convention and the way in which the particular constitutional provision was there involved. It is not pretended in that case that the authorities holding with the plaintiff here are in any wise incorrect in their decision or in their reason, but only that such reasoning does not apply to the situation as it existed in Virginia. And the other cases cited to support defendant's position are based on constitutions differing from our own.

Where the constitution fixes the term the Legislature has no power to abridge it directly or indirectly. (People v. Perry, 79 Cal., 105; People v. Rosborough, 14 Cal., 181; People v. Carey, 6 Cow., 642; Howard v. State, 10 Ind., 99; Douglas v. State, 31 Ind., 429; Griebel v. State, 111 Ind., 369; Stadler v. Detroit, 13 Mich., 346; State v. Brady, 42 O. St., 504; Atty. Gen. v. Brunst, 3 Wis., 787; State v. Askew, 48 Ark., 82 (2 S. W., 349); State v. Lylies, 1 McCord Law (S. C.), 238; State v. Police Comm'rs, 14 Mo. App., 297; 88 Mo., 144; Fant v. Gibbs, 54 Miss., 396; State v. Chapin (Ind.), 11 N. E., 317; People v. Burbank, 12 Cal., 378; People v. Board, 19 N. Y. Supp:, 625; Powers v. Hurst, 2 Hump., 24; Brower v. Davis, 9 Hump., 209.)

Under the constitutional provisions it is clear that the people intended that state officers, so far as any vacancy may occur, shall be elected in November of each year. These provisions it was which had much to do with another authority which might here be cited in favor of the plaintiff and which we deem of greater weight than any other authority that has been cited upon the question of either side. We refer to the uniform construction that has been

given by the people of the state to the question of the succession of District Judges. In the Fourth District a judge was appointed under a statute which attempted to make the term of the appointee four years, but the unanimous sentiment of the state construed our State Constitution as requiring that Judges shall be elected and not appointed, and as providing that an opportunity to elect is afforded in November of each year, and therefore that no appointment made a sufficient time before November in an even year to enable the people to vote could run further than until the first of January after such opportunity to vote. So it was that in the Fourth District candidates were put in the field in November, although by the statute and the commission of the appointee he still had more than two years to serve. But the construction has not stopped here. In three districts of the state vacancies have occurred, appointments have been made, new elections held, and the practically unanimous opinion of the people of the state, as evidenced by their conduct upon these matters, has been that in case of a vacancy the Governor can appoint until the next election; that at the next general election after the vacancy occurs it is for the people to elect the Judge; that the Judge when so elected serves the full term of six years as provided by the constitution, and is not limited to the unexpired term of his predecessor. We conclude that the almost, perhaps entirely unanimous construction of constitutions at all similar to ours give to the plaintiff a full term of four years; that our constitution is stronger in favor of this construction construed in most of the cases cited; and that the contemporaneous construction of our constitution shows that such is the intention here.

BEARD, Justice.

The relator, William C. Irvine, commenced this action in this court against the defendant Bryant B. Brooks as Governor of the state, praying that a writ of mandamus be issued to the Governor commanding him to deliver to relator

a certificate of his election as State Treasurer for the period of four years from and after the first Monday in January, 1905. The allegations of the plaintiff's petition, so far as necessary to an understanding of the questions presented, are in substance: That at the regular election held in the state in the year 1902, one Henry G. Hay was duly elected to the office of State Treasurer for the term of four years; that on September 19, 1903, said Hay resigned and the relator was thereupon appointed by the Governor to fill the vacancy in said office until the next general election occurring in 1904. That at that election the relator was duly elected to the office of State Treasurer; that the votes were duly canvassed and the state canvassing board duly certified the result of said election to the Secretary of State, which certificate showed that relator had been elected to said office. That the Secretary of State, who was acting as Governor, by reason of the death of the Governor, which occurred April 28, 1903, did on the tenth day of December, 1904, and after the state canvassing board had filed its certificate in the office of the Secretary of State, sign, seal and cause to be left upon the desk of relator a certificate reciting that relator had been lawfully elected as Treasurer of the State of Wyoming for the remainder of the unexpired term of Henry G. Hay, resigned. That as soon as relator discovered said certificate, on or about December 26, 1904, he requested the Secretary of State, who was still acting as Governor, to execute and deliver to him a certificate showing his right to hold said office of Treasurer for the period of four years from and after the first Monday in January, 1905, which the Secretary of State, acting as Governor, refused to do. That the defendant, Bryant B. Brooks, was duly elected Governor of the state at the general election in 1904 as the successor of Governor DeForest Richards, deceased, and that he qualified and entered upon the discharge of his duties as Governor January 2, 1905. That on or about January 18, 1905, the relator demanded of and from the defendant, as Governor of the state a certificate of election showing his election to the office of State Treas-

urer and his right to hold the same for the period of four years from and after the first Monday in January, 1905, which the Governor refused to issue.

On the presentation of the petition to the Chief Justice of this court an alternative writ of mandamus was issued against the defendant and made returnable to the court. The defendant appeared by the Attorney General of the state and filed a demurrer to the petition and writ upon the following grounds:

"1. That the court has no jurisdiction of the person of the defendant, or the subject of the action.

"2. That the petition and writ filed herein do not state facts sufficient to constitute a cause of action."

Two questions have been presented for our consideration, and have been ably argued by counsel, viz:

1. Has this court jurisdiction to issue a writ of mandamus against the chief executive of the state?

2. What is the length of plaintiff's term of office?

On the first question the Attorney General contends that the court is without jurisdiction for the reason that under our form of government the powers of government are divided into three distinct departments; the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as expressly directed or permitted by the constitution; and that the assumption of jurisdiction by the court to issue a writ of mandamus against the Governor requiring him to execute and deliver a certificate of election in this case would be exercising powers by the court which properly belong to the executive department of the government. If the duty enjoined upon the governor in this instance is political or executive and is such a duty as involves the exercise of discretion in the manner of its performance, then it is clear that the court cannot interfere to control that discretion. Whether or not the court has jurisdiction in any case to issue the writ of

mandamus to the chief executive is a question upon which the decisions of the courts are not harmonious, nor do the text writers agree in their conclusions. In many of the cases which hold that the court is without jurisdiction, the decisions are based upon the conclusion that the duty, the performance of which was sought to be enforced, was a political duty, in the performance of which the executive had the right to exercise discretion. An early leading case on that side of the question and one most often cited by the courts in which the writ has been denied is Hawkins v. The Governor, 1 Ark., 570. Hawkins applied to the Supreme Court of Arkansas for a writ of mandamus against the Governor to require him to issue a commission to Hawkins as Commissioner of Public Buildings, to which office he claimed to have been duly elected by the General Assembly. The Governor refused to issue the commission on the ground, that at the time the election was held there was no law in force authorizing the Legislature to hold an election for that office. The court declined to take jurisdiction of the case for the reason that the duty imposed upon the executive was a duty imposed by the constitution and was "strictly and exclusively political" and that the executive was therefore invested with discretion. But the case does not hold that, had the duty been clearly ministerial, the court would have been without jurisdiction to issue the writ or in so doing would have been assuming powers properly belonging to the executive department of the government. Another case much relied upon and often cited is Sutherland v. The Governor, 29 Mich., 320. That case follows the reasoning in the Arkansas case and is based solely on the ground that the duty imposed upon the governor was a political one, where he had the right to exercise discretion. It is said, "Moreover, it is not customary in our republican government to confer upon the governor duties merely ministerial, and in the performance of which he is to be left with no discretion whatever; and the presumption in all cases must be, where a duty is devolved upon the chief executive of the state rather than upon an

inferior officer, that it is so because his superior judgment, discretion, and sense of responsibility were confided in for more accurate, faithful, and discreet performance than could be relied upon if the duty were devolved on an officer chosen for inferior duties."

It may not be customary to impose ministerial duties upon the chief executive; but if they are so imposed, how can it be said that the character of the duty has been changed from one that is ministerial to one that is discretionary? The character of the duty must be determined by the nature of the act to be performed and not by the office of the performer. If the Legislature might have required plaintiff's certificate of election to have been executed and delivered by the Secretary of State or some other officer, and in so doing he would have been performing a merely ministerial duty, then it must necessarily remain ministerial when conferred upon the Governor.

We have examined many other cases holding that the court is without jurisdiction with the result that in a majority of them the decisions are based upon the ground that the duty enjoined upon the chief executive, the performance of which was sought to be enforced, was a political and not a ministerial duty; while in others, as in Michigan, it is held that all duties imposed upon the Governor, whether by the constitution or statute, are to be regarded as political or executive and therefore involving discretion. A ministerial duty has been variously defined. "The most important criterion, perhaps, is that the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." Mechem on Public Officers, Sec. 658. "A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is simply definite duty,

arising under conditions admitted or proved to exist, and imposed by law." State v. Johnson, 4 Wall. (U. S.), 475, 498. " A ministerial duty is one in respect to which nothing is left to discretion." Sullivan v. Shanklin, 63 Cal., 247, 251. "Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment the act is ministerial." Commissioner v. Smith, 5 Tex., 471; Rains v. Simpson, 50 Tex., 495, 32 Am. Rep., 609.

Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed. But when a positive duty is enjoined and there is but one way in which it can be performed lawfully then there is no discretion. In this case the state canvassing board had performed its duty and had made and filed in the office of the Secretary of State its certificate containing a statement of the votes canvassed and the result thereof, which showed that relator had received the highest number of votes for State Treasurer. It then became the duty of the Governor to give him a certificate of election. Sec. 351, R. S. 1899. The statute does not prescribe the form of the certificate, but it being the evidence of plaintiff's title to the office and of his right to take and hold the same, should contain the name of the person elected, the title of the office and the term to which he had been elected. There was nothing left to the discretion of the Governor. The canvassing board had certified that relator had received the highest number of votes and the constitution and laws fixed the length of the term. The duty was purely ministerial and might as well have been enjoined upon some other officer. It was not a duty imposed by the constitution, if that could make any difference, but by the statute only; and that it was not regarded by the Legislature as a political or executive duty, which could properly be performed by the Governor only, clearly

appears by Sec. 370, R. S. 1899, where provision is made for determining a tie vote for state officers by the Legislature; in which case the certificate of election of the person so chosen is to be issued to him by the Secretary of State.

The duty being ministerial, we think the weight of authority and the better reasoning is in favor of the jurisdiction of the court to issue the writ and is not an assumption of executive powers. The court does not attempt to perform the act; but simply interprets the provisions of the constitution and laws under which the Governor is required to act. That is the peculiar province of the judiciary, and its interpretation of the law is as binding upon the executive as upon any other citizen. In discussing this question the Supreme Court of Ohio in the case of The State ex rel. Whiteman v. Governor, 5 O. St., 528, said: "It is claimed, on the part of the defense, that, inasmuch as the government is by the constitution divided into three separate and co-ordinate departments, the legislative, the executive, and the judicial, and inasmuch as each department has the right to judge of the constitution and laws for itself, and each officer is responsible for an abuse or usurpation in the mode pointed out in the constitution, it necessarily follows that each department must be supreme within the scope of its powers, and neither subject to the control of the other for the *manner* in which it performs, nor its *failure* to perform, either its legal or constitutional duties. This argument is founded on theory rather than reality. That each of these co-ordinate departments has duties to perform in which it is not subject to the controlling or directing authority of either of the others, must be conceded. But this independence arises not from the grade of the officer performing the duties, but by the nature of the authority exercised. * * * * In Marbury v. Madison, 1 Cranch, 170, Chief Justice Marshall said: 'It is not by the office of the person to whom the writ is directed, *but the nature of the thing to be done,* that the propriety or impropriety of issuing a mandamus is to be determined,' and further on

in the same opinion the court says: 'But there is nothing in the nature of the chief executive office of this state which prevents the performance of some duties *merely ministerial* being enjoined upon the Governor.. While the authority of the Governor is *supreme* in the exercise of his own judgment or discretion, the authority of the judiciary of the state is *supreme* in the determination of all legal questions involved in any matter judicially brought before it.'" In that case the application was for a writ of mandamus against the Governor to require him to issue a certificate to a bank as a branch of the State Bank of Ohio, and it was held that the duty to do so imposed upon the Governor was ministerial, and that the court had jurisdiction; although the writ was denied for other reasons.

In the case of Magruder v. Swann, Governor, 25 Md., 173, which was an application for a writ of mandamus against the Governor to require him to issue to the petitioner a commission as Circuit Judge, after reviewing the decisions on the question of jurisdiction, the court said: "The Governor, in his political and executive duties requiring the exercise of his judgment and discretion, is entirely independent of any other authority. But all judicial power is as absolutely committed to the Judiciary Department, as political or executive power is to the Governor. Among these judicial duties is the decision of controversies between man and man, whether they involve the right to office, life, liberty or property, or arise under the provisions of the constitution, statute or common law." The court held that it had jurisdiction and ordered the writ to issue. This decision was followed and approved in Groome, Governor, v. Guinn, 43 Md., 572.

We cite the following cases, but without reviewing them here, which hold that duties such as are imposed upon the Governor in this case are merely ministerial and that the court has jurisdiction to issue a writ of mandamus against the Governor requiring their performance. (Greenwood Cemetery Land Co. v. Routt, 17 Colo., 156 (31 Am. St.

Rep., 284.) ; Chumasero v. Potts, 2 Mont., 242; McCauley v. Brooks, 16 Cal., 11 ; Middleton v. Low, Governor, 30 Cal., 596; Harpending v. Haight, Governor, 39 Cal., 189; Martin, Governor, v. Ingham, 38 Kan., 641; State ex rel. Bates v. Thayer, 31 Neb., 82; State ex rel. Wright v. Savage, 90 N. W. Rep. (Neb.), 898; Cotton v. Ellis, Governor, 7 Jones Law (52 N. C.), 545; Traynor v. Beckham, Governor, 25 Ky. L. Rep., 283, 74 S. W. Rep., 1105.) In Nevada.the court took jurisdiction, although the question was not raised or discussed. (State ex rel. Wall v. Blasdel,. Governor, 4 Nev., 241; State ex rel. Laughton v. Adams,. Governor, 19 Nev., 370. See also State ex rel. Lockwood et al. v. Kirkwood, Governor, 14 Ia., 162, and The State v. Foster, 38 O. St., 599.)

Another reason, presented by the Attorney General, and stated in some of the cases, why the court should not take jurisdiction is, that the governor might refuse to comply with the order of the court; and being the commander in chief of the military forces of the state could successfully resist the enforcement of the writ; and that it would be humiliating for the court to render a judgment which it had not the power to.enforce. The answer to that objection is that the jurisdiction of the court does not depend upon its physical ability to enforce its judgments; but upon its right to hear and determine the matter in controversy; or as the word itself means, the right to declare the law. To refuse to take jurisdiction for that reason would be to assume, which this court will not do, that the Governor might knowingly violate the constitution and his oath of office which require him to take care that the laws are faithfully executed. In but few of the states where the question has. been decided are the constitutions and statutes like those of this state. Our statute, Sec. 4194, R. S. 1899, defines. the writ of mandamus as follows: "Mandamus is a writ issued in the name of the state to an inferior tribunal, a corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting

from an office, trust or station." And Sec. 3, Art. V, of the Constitution provides: "The Supreme Court shall have original jurisdiction in *quo warranto* and mandamus as to all state officers, and in *habeas corpus.*" It may be said that it was the intention of this section to confer original jurisdiction upon the Supreme Court. That is undoubtedly true; but we must assume that the framers of the constitution, among whom were a number of able lawyers, were aware of the conflict of authority upon this important question and that they used the words "as to all state officers" advisedly.

We are of the opinion that the duty imposed upon the Governor in this instance is purely ministerial; that the court has jurisdiction; and that the writ should issue, if the contention of the relator that his term of office is four years from and after the first Monday in January, 1905, is correct.

The length of plaintiff's term of office depends upon the proper construction of the constitutional provisions, and so far as they relate to the office of State Treasurer are as follows:

Art. IV, Sec. 11. "There shall be chosen by the qualified electors of the state at the times and places of choosing members of the Legislature, a Secretary of State, Auditor, Treasurer and Superintendent of Public Instruction, who shall have attained the age of twenty-five years respectively, shall be citizens of the United States, and shall have the qualifications of state electors. They shall severally hold their offices at the seat of government, for the term of four (4) years and until their successors are elected and duly qualified, but no person shall be eligible for the office of Treasurer for four (4) years after the expiration of the term for which he was elected."

Art. VI, Sec. 5. "All general elections for state and county officers, for members of the House of Representatives and the Senate of the State of Wyoming, and Representatives to the Congress of the United States, shall be held on the Tuesday following the first Monday in Novem-

ber of each even year.  Special elections may be held as now, or as may hereafter be provided by law.  All state and county officers elected at a general election shall enter upon their respective duties on the first Monday in January next following the date of their election, or as soon thereafter as may be possible."

Art. IV, Sec. 7.  "When any office from any cause becomes vacant, and no mode is provided by the constitution or law for filling such vacancy, the Governor shall have the power to fill the same by appointment."

Art. XXI, Sec. 20.  (Schedule.)  "Members of the Legislature and all state officers, District and Supreme Judges elected at the first election held under this constitution shall hold their respective offices for the full term next ensuing such election, in addition to the period intervening between the date of their qualification and the commencement of such full term."

The constitution of the state was adopted at a general election held November 5, 1889, and the state was admitted into the union by an act of Congress, approved July 10, 1890, and the first election held under the constitution was held September 11, 1890.

Before proceeding to the consideration of the question of the length of the term of office of the relator in this case, it may be well to state what we consider to be the rules of law governing such cases, and we cannot do so better than by quoting the rules as stated in A. & E. Enc. Law, as follows:  "Where the time of the commencement and termination of the term of an office, as well as its duration, are definitely fixed by constitutional or statutory enactment, and provision is made for filling vacancies therein by appointment or election, but without any provision as to the duration of authority of a person so appointed or elected, such person is entitled to serve for the remainder of the unexpired term.  But where the term of an elective office is fixed by the constitution or statute, but without any time being established for its beginning or ending, a person

elected to the office will be entitled to hold for the period established as the full term thereof, whether he was elected upon the happening of a casual vacancy or at the expiration of a complete term." (23 Enc. Law (2nd Ed.,) 418, and cases cited in notes. See also Parcel v. State ex rel. Lowrey, 110 Ind., 122. Tansey v. Stringer, 76 S. W. (Ky.), 573; Adams v. Doyle, 73 Pac. (Cal.), 582; State ex rel Godard v. Andrews, 67 Pac. (Kan.), 870; Ladd v. Board of Trustees, 80 Ill., 233.)

We have not overlooked other cases construing somewhat similar provisions in constitutions and statutes where it has been held that the person elected to fill a vacancy would hold for the full term; but upon a careful examination of all of the authorities at our command we think the rules above stated are sound in reason and in accordance with the policy of our constitution and laws.

There is no contention in this case that the relator was not properly elected at the general election in November, 1904, to fill the vacancy caused by the resignation of Hay. The Attorney General concedes that the appointee of the Governor held only until the vacancy could be filled by election. The duration of the official term is definitely fixed by the constitution at four years, and it is also admitted by both parties that Hay was elected for the full term commencing on the first Monday in January, 1903. From the time of the admission of the state up to the time of the resignation of Hay there had been no vacancy in the office of State Treasurer by the death or resignation of the Treasurer or otherwise than by the expiration of the term. Up to that time each incumbent of the office had served for the full term and his successor had been regularly elected at the general election next preceding the expiration of the term. It is true that the year in which the first state officers' full terms should commence was not named in the constitution, nor could it be. The state had not been admitted when the constitution was framed and adopted and it could not be known at that time when, if ever, the territory would be ad-

mitted as a state and the constitution take effect. Therefore, in order to definitely fix the beginning of the full term of the first state officers, it was provided, that all state officers elected at the first election held under the constitution should hold office for the full term next ensuing such election in addition to the period intervening between the date of their qualification and the commencement of such full term. The state having been admitted in July, 1890, the full term of the state officers elected at the first state election, which occurred in that year, commenced on the first Monday in January, 1891, and the full term being four years, that term necessarily ended on the first Monday in January, 1895, when a new term commenced, and so on, one term ending and a new term commencing every four years from the first Monday in January, 1891. In our opinion the constitution not only fixed the length of the official term of the State Treasurer, but also definitely fixed the date of the commencement and end of the term.

We are very much aided in construing these provisions. of the constitution by the construction placed thereon by the first Legislature of the state which convened on the 12th day of November, 1890. By Chap. 68, S. L. 1890-91, after providing in Sec. 1 of that chapter for the holding of a general election in the state on the Tuesday next following the first Monday in November in the year 1892 and each second. year thereafter, at which elections certain named county and precinct officers should be elected, further provided in Sec. 4, "At each of said general elections there shall also. be elected such state officers as may be required to be elected to fill any vacancy occurring by operation of law, or the constitution of this state, including any vacancy or vacancies in the office of Justice of the Supreme Court." And in Sec. 5, provision was made for the election of presidential electors at the general election in 1892 and each fourth year thereafter. And by Sec. 6, "At the general election held in the year one thousand, eight hundred and ninetyfour, and at the general election held every fourth year

thereafter, there shall be elected a Governor, a Secretary of State, an Auditor, a Treasurer, a Superintendent of Public Instruction, and such other state officers as are, or may be, created by law and made elective, whose election shall occur, or ought to occur at such general election." The act, having been passed by the Legislature, was approved by the Governor January 10, 1891. It requires no argument to show that both the Legislature and the Governor construed the constitution to mean that the state officers named in the section last above quoted were to be elected for full terms every four years by Sec. 4; and that vacancies occurring in such offices prior to the intermediate elections should be filled at such intermediate elections for the balance of the term, and that the full terms of such state officers were to commence on the first Monday in January, 1895, and each four years thereafter; the full term of the first set of state officers having commenced on the first Monday in January, 1891. This interpretation having been placed upon these provisions of the constitution by the first State Legislature, while not conclusive, is certainly entitled to much weight in determining the true meaning of the language used in the constitution.

It has been urged that inasmuch as the constitution, Art. IV, Sec. 11, provides that a State Treasurer shall be elected at the "times and places of choosing members of the Legislature" who shall hold his office for four years; and that the relator having been elected at a general election his term is necessarily for the full term of four years. That is not, in our opinion, the meaning of the section. The purpose was to avoid frequent elections and in case of a vacancy in any state office or when the terms of state officers would expire before the next general election, those places should be filled at the same elections at which members of the Legislature were chosen. In the case of *In re* Moore, 4 Wyo., 98, decided in 1892, it was held that an election for governor to fill the unexpired term of the former Governor, who had resigned, was properly held at the general elec-

tion and that the person so elected would enter upon the duties of his office on the first Monday in January following his election. The election in that case was held in November, 1892, and was not at the time for the election of state officers generally. Conaway, J., who delivered the opinion of the court, said: "Still it is contended that the election of Governor Osborne was not, within the meaning of the constitution and the statutes, 'at a general election;' that as to the office of Governor, the election was special; that vacancies in office for unexpired terms must necessarily be filled at special elections, and conversely that the election of an officer at a general election is necessarily for a full term. Such is not the idea of the constitution in providing that 'if a vacancy occur in the office of a Justice of the Supreme Court the Governor shall appoint a person to hold the office until the election and qualification of a person to fill the unexpired term occasioned by such vacancy, which election shall take place at the next succeeding general election.' (Const., Art. V, Sec. 4.) Such is not the idea of those statutes in providing, in accordance with the constitutional idea and policy, for filling vacancies for unexpired terms at general elections. Such is not the idea of the Legislature of Wyoming on this subject for many years preceding the adoption of the state constitution. It has been the uniform policy to fill remaining portions of unexpired terms of officers in cases of vacancy, as far as practicable, at general elections. And this is the evident policy of our constitution and of our present statutes." While the question in that case was not the length of the term of the Governor elected to fill a vacancy, the language used by the court clearly indicates that a state officer elected at a general election to fill a vacancy would hold only for the remainder of the unexpired term. Although that case cannot be regarded as an authority on the question we are now considering, yet it has a strong bearing upon the question and aids materially in the proper interpretation of the constitution. It is also argued that the people have construed these constitutional provisions and

having done so the court should follow that construction or at least consider it of great weight in determining the question; and counsel call attention to the situation in three of the judicial districts of the state where judges elected to fill vacancies have been permitted to hold during the full term of six years. That a uniform popular construction of a constitution or statute, fairly made and long acquiesced in, is a·strong reason for maintaining such construction cannot be doubted. But in this state the so-called popular construction of somewhat similar constitutional provisions with regard to other offices has not been uniform. In at least one of the districts referred to, that construction was challenged by a proceeding in this court in the case of State ex rel. Sammon v. Chatterton, 12 Wyo., 168, where the question was sought to be raised; but the case went off on demurrer for the want of necessary allegations in the petition to raise the point.

In 1892 Governor Osborne was elected to fill a vacancy in the office of Governor caused by the resignation of Governor Warren. He served for the unexpired term only, and no claim was made that he was entitled to a full term. Both political parties placed candidates in nomination for Governor in 1894 and at the eleection in that year Governor W. A. Richards (a Republican) was elected (Governor Osborne being a Democrat) and no objections were made to Governor Richards assuming the duties of the office on the first Monday in January, 1895, although at that time the struggle for political supremacy between the two political parties in this state was at high tide. So that so far as the popular constructions of similar provisions of our constitution to those we are now considering are concerned, they have not been uniform and are of but little if any aid in determining the question. The term of a Governor or a District Judge elected to fill a vacancy is not, however, involved in this case.

The vacancy which was created by the resignation of Hay was in his term only. By his resignation he could

create no vacancy in a term which was not to commence until the first Monday in January, 1907, no part of which he was entitled to hold; and no election could be held in 1904 to fill a vacancy in that term because none existed or could exist until after the election in 1906, which would be the general election next preceding the commencement of that term. It was said in The People ex rel. Jackson v. Potter, 47 N. Y., 376, "Mr Justice Rosekrans could not resign that which he did not hold. He did not hold nor was he entitled to hold the term beginning January 1st., A. D. 1872, nor any part thereof. He could not then resign that term nor any part of it. Hence the resignation which he made could create no vacancy in the office for that term to be filled, nor for any part thereof. The vacancy which he did create was for the remainder of his unexpired term, and for no other time. This was the vacancy to be filled and no other." That case is cited and approved in Simpson v. Willard, 14 S. Car., 191.

Our conclusions are, that plaintiff was elected at the general election in 1904 for the unexpired term of Henry G. Hay, resigned, only; and that the Governor rightly refused to issue to him a certificate of election for any longer period.

The demurrer of the defendant to plaintiff's petition is, therefore, overruled as to the first ground of demurrer, and is sustained as to the second ground. A peremptory writ of mandamus is denied.

POTTER, C. J., and SCOTT, J., concur.