SARAH L. TITCOMB vs. FITCHBURG RAILROAD COMPANY. .
SARAH A. WHITE vs. SAME.

The duty of a railroad company to keep in repair a bridge with its abutments, which they have constructed over their railroad at a place where the railroad crosses the highway through a cut, in order to allow the crossing of the highway over the same, under Rev. Sts. c. 39, § 72, extends beyond the abutments to the line of the excavation made by the company in constructing their railroad. And if a traveller has received an injury within that line, through a defect in the railing, a verdict in his favor, in an action against the company, will not be set aside on account of an instruction to the jury that the liability of the company extends to the line of the location of the railroad.

If the injury at such place occurred by reason of the want of a sufficient railing, and would not have occurred if the railing had been suitable and proper for the place, the traveller may recover damages therefor against the railroad company, although his horse became frightened without the fault of anybody, and ran against the railing and broke through it and thus caused the injury complained of.

Two actions of tort, to recover damages for personal injuries sustained by the plaintiffs, by reason of a defective bridge over the defendants' railroad, where the same was crossed by a highway. The cases were tried together in this court, before *Colt*, J.

The plaintiffs offered evidence tending to show that at the time of receiving the injury they were riding together in a carriage drawn by one horse, driven by another woman, upon Newton Street in Waltham, and, as they were passing upon a bridge over the defendants' railroad, a train of the defendants came along, and the horse was frightened by the smoke and steam from the engine and became unmanageable and rushed upon the fence and went through it, and the horse, carriage and women were all precipitated down the bank, a distance of fourteen feet below, and the horse killed, the carriage broken, and the plaintiffs injured. There was also evidence tending to show that the plaintiffs were driving at a proper rate of speed with due care and with a suitable horse and carriage; and that the fence was old and rotten and insufficient as a barrier.

It appeared that the defendants were incorporated by *St.* 1842, *c.* 84, and built their railroad in 1843 and 1844; that in building the railroad across Newton Street they made a cut through the same, at right angles therewith, and built this bridge over the

Titcomb *v.* Fitchburg Railroad Company.

cut, with abutments ; that the wooden structure of the bridge
and the abutments did not fill up the entire width of the exca-
vation, but the rest of the distance was filled up with earth and
graded by the defendants to a level with the planks of the bridge
and the highway ; that the bridge and abutments were not as
wide as the highway, and fences were built by the defendants
from the abutments to the line of the defendants' location, a dis-
tance of twenty-seven feet, and the fence where the horse went
through was repaired by them before the accident. The evi-
dence tended to show that the horse went through that half of
the fence which was nearest the abutment, and very near the
bridge.

The defendants' evidence tended to show that the fence was
upright and sound and reasonably sufficient for the purpose,
and that their train was proceeding in the ordinary manner,
properly equipped and manned, and at a rate of twelve or fif-
teen miles an hour. The plaintiffs contended that the defend-
ants were negligent in running the train with unusual noise and
escaping steam ; in narrowing the highway and wooden portion
of the bridge ; in allowing cracks in the bridge through which
smoke and steam came up; and in the structure and condition
of the fence where the horse went through.

The defendants requested the court to instruct the jury as
follows :

" 1. Inasmuch as it appears that the horse by which the plain-
tiffs were drawn was frightened, unmanageable and beyond con-
trol, by reason of the noise or smoke or steam of the defendants'
train, which was passing at the time in its usual and ordinary
manner, the plaintiffs offering no evidence that there was unu-
sual or extraordinary use of the defendants' road at that time,
the defendants were not responsible ; and it would make no dif-
ference whether the smoke came up through the crevices of the
bridge or at its side, if the bridge were otherwise suitable for
public travel.

" 2. The defendants were not bound to maintain the fence
through which the horse rushed, inasmuch as it constituted no
part of the bridge or its abutments, and consequently they were
not responsible for its condition.

" 3. Inasmuch as it appears from the plaintiffs' own testimony that the horse at the time of the accident was frightened, un manageable and beyond control, without fault on the part of the defendants, and while in this state rushed upon the fence, the condition of the fence was immaterial and the plaintiffs cannot recover."

The judge declined to give the instructions asked for, and instructed the jury as follows :

" The burden of proof is upon the plaintiffs to satisfy the jury that at the time of the accident they were in the exercise of ordinary care. The want of due care on their part in any respect, however slight, contributing to the injury, will prevent their recovery. Due care is such care as prudent people use in positions of like exposure and danger. It varies with the circumstances of every case; and the plaintiffs will be affected in the same way by want of care on the part of the person who was driving the horse.

" If satisfied that the plaintiffs were not at fault, the burden is upon them next to satisfy the jury that the accident was caused by the negligence and want of due care on the part of the defendants or their servants, and that this negligence was an efficient cause of the plaintiffs' injury. As to negligence in running their train with unusual noise and escape of steam, the defendants under their charter have the right to build and operate a railroad, and to cross public highways, and to run their trains with the usual and necessary incidents of noise and escaping steam ; and if, while so exercising their rights, the horse of a traveller on the highway is frightened and the traveller injured, he is without remedy. If the train was run without due care and with unusual and unnecessary noise and smoke, the defendants would be responsible for injury resulting therefrom.

" In regard to the construction and repair of the bridge proper, the defendants were bound to provide and keep in repair a bridge reasonably suitable for the safety of the public travel over it, with reference to the use for which the bridge was constructed, but were not bound to build a bridge at such expense and with such appliances as perfectly to protect the traveller

from all danger of fright to his horse from noise and smoke that would be impossible. If this bridge was defective by reason of its narrowness, or the cracks through which the smoke escaped, or in any other respect, the jury must go one step further, and find that these defects were the cause of the accident, and that the injury would not have happened if they had not existed.

"As to the insufficiency of the fence where the horse went through, the law required the defendants to construct, maintain and keep in repair, not only the bridge proper and the stone abutments, but all that part of the crossing which is between the bridge proper and the line of the location of the road ; and it is for the jury to say whether it has been so constructed and kept in repair, looking to the dangers to which the traveller was exposed and the consequences of an accident. The jury may consider the greater liability to fright to which horses are exposed at this place, and find, upon the whole evidence, whether the fence was necessary, and whether it was properly constructed and kept in repair.

" If the jury find that a railing or fence was necessary to keep that part of the crossing in repair for the proper security of the public travel, and that the fence as it existed was not sufficient, and that the horse became frightened without the fault of the plaintiffs or the defendants, so as to become unmanageable for the time, and ran against the fence in question ; then, if the jury are further satisfied that the injury to the plaintiffs would not have occurred if the fence or railing had been sufficient, they must find verdicts for the plaintiffs."

The jury returned verdicts for the plaintiffs, with $1250 damages in the first action, and $2000 damages in the second ; and the cases were reported for the determination of the whole court.

*J. G. Abbott & H. C. Hutchins,* for the defendants. The defendants were not bound to maintain the fence where the horse went through. Under no circumstances, prior to *St.* 1846, *c.* 271, was a railroad company bound to build or maintain anything but the bridge and its abutments. That statute does not apply to railroad companies previously incorporated. *Stearns* v. *Old*

*Colony & Fall River Railroad*, 1 Allen, 493. The duties and obligations of the defendants depend on Rev. Sts. *c.* 39, § 72, which extend simply to bridges with their abutments. The rest of the highway is to be maintained by the town, as before. The town is not absolved from all duty, even with reference to the bridge; but must keep it free from obstructions, and the highway leading to it in repair, as before. The duty of the railroad company is defined by the statute, and ends with the construction and maintenance of the bridge and its abutments; and the duty of the town begins where that of the railroad company ends. The fence now in question was no part either of the bridge or of its abutments. The instruction to the jury was that the defendants were bound to maintain the fence to the line of the location of the railroad, and this was along the line of the highway. *Davis* v. *Leominster*, 1 Allen, 182. The fact that the defendants built this fence in the first ·instance will not of itself create a liability on their part to maintain it. *Moss* v. *Boston & Maine Railroad*, 2 Cush. 536.

Even if the defendants were bound to maintain this fence, the plaintiffs cannot recover, because they were not in the exercise of due care. The defendants were not bound to maintain such a fence as would stop a runaway horse. *Davis* v. *Dudley,* 4 Allen, 557. *Stickney* v. *Salem*, 3 Allen, 374. *Richards* v. *Enfield*, 13 Gray, 344. *Kidder* v. *Dunstable*, 7 Gray, 104. *Moulton* v. *Sanford*, 51 Maine, 127. It could not possibly be determined by the jury how much the accident was attributable to the fault of the plaintiffs, and how much to that of the defendants; or whether the accident would have happened if the fence had been sufficient. The horse was frightened and unmanageable. It makes no difference whether he had run one rod or twenty.

*E. D. Sohier & D. E. Ware*, for the plaintiffs. This bridge was within the meaning of Rev. Sts. *c.* 39, § 72. *Sawyer* v *Northfield*, 7 Cush. 496. The fence which the horse went through was within the limits of the bridge and its abutments *Commonwealth* v. *Deerfield*, 6 Allen, 449. The defendants were bound to keep it safe and secure for travel. *Bigelow* v. *Weston,*

3 Pick. 267. The instructions as to the effect of the fright of the horse were correct. *Rowell* v. *Lowell*, 7 Gray, 100. *Palmer* v. *Andover*, 2 Cush. 600. *Winship* v. *Enfield*, 42 N. H. 197. *Hunt* v. *Pownal*, 9 Verm. 411.

Dewey, J.* It is found by the report of these cases that the plaintiffs were driving at a proper rate of speed, with due care and with a suitable horse and vehicle, at the time they received the injuries for which they claimed damages. It is further proved that the fence was old and rotten where the horse went through, and was not in a proper state of repair.

The first inquiry is, whether the defendants were bound to maintain and keep in proper repair a fence or other barrier at the place where the horse went through the same. The duty, if it existed, arose under Rev. Sts. *c.* 39, § 72, requiring that " every railroad corporation shall maintain and keep in repair all bridges with their abutments which such corporation shall construct over or under any turnpike road, canal, highway or other way."

To some extent certainly the highway at the end of the bridge structure may be considered as connected with the bridge. The English law seems to extend it three hundred feet from the bridge. We have no such rule, but the approaches to the bridge must to some extent be regarded as appended to it, and the responsibility as to their being kept in a safe and proper state is devolved upon the party required to construct and maintain the bridge. *Commonwealth* v. *Deerfield*, 6 Allen, 449. *Parker* v. *Boston & Maine Railroad*, 3 Cush. 107.

We can have no doubt that the portion of the fence connected with the bridge where the horse passed through was an appendage to the bridge which the defendants were bound to maintain and keep in repair. The bridge with its abutments must at least be held co-extensive with the entire excavation made of the earth in crossing the highway, and is not to be limited to the exterior line of the stone wall and the plank structure resting on those walls.

* Hoar, J., did not sit in this case.

It was objected at the argument, on the part of the defend-
ants, that the court instructed the jury that the defendants were
bound to maintain and keep in repair not only " the bridge
proper· and the abutments, but all that part of the crossing
which is between the bridge proper and the line of the location
of the road." Whether this instruction to its full extent might
or might not be maintained upon the facts of the present case
and the acts of the defendants in the manner of constructing
this bridge and narrowing the road entering upon it, it is not
necessary to determine, inasmuch as the uncontroverted facts
show that the horse passed through that half of the fence which
was nearest the abutment, and at a point very near the bridge,
and where the liability to maintain a barrier did clearly exist,
however it might be as to the liability of the defendants to con-
tinue the same to the line of the location of the road.

It is further contended that the defendants were not liable to
the plaintiffs, although they had neglected the duty devolved
upon them by law of maintaining a proper fence or other suit-
able barrier at the place where the injury was received, inasmuch
as the horse was frightened and became unmanageable without
any fault on the part of the defendants in the running of their
cars. The court very fully and properly instructed the jury that
the defendants had the right to operate their road and to cross
public highways, and to run their trains with their usual and
necessary incidents of noise and escaping steam, and if while
exercising their rights the horse of a traveller should be fright-
ened and the traveller injured, he would be without remedy.
But while this is true where no negligence exists on their part
as to their duties for the security of travellers on the public
highway contiguous to their road, yet it by no means follows,
if an injury to the traveller occasioned by the horse becoming
frightened and unmanageable would have been prevented if the
proper fence or barrier required by law to be maintained by them
had existed, that the railroad company are not responsible. In
their ordinary line of travel and running of their cars upon land
duly taken and paid for, they are not required to take any
specific measures to guard against frightening horses, or other

casualties that may be occasioned by the noise of the cars and escape of steam, and travellers on the highway must take care to avoid any exposure that might be occasioned thereby. But in crossing the highway and interfering with the ordinary use of another public easement, they had specific duties to perform, and among them that of making a proper fence or barrier at this place. So far as such a fence would be effectual to guard against injury from the frightening of a horse about to enter upon the bridge, by the approach of a train of cars passing under the bridge, the plaintiffs were entitled to that protection. Not that the defendants were bound to maintain a barrier that would in all cases stop the progress of a frightened horse about to enter upon the bridge, but they were bound to maintain and keep in repair a suitable and proper fence at this place; and if the discharge of this duty would have prevented the occurrence of the present injury, and the plaintiffs are shown to have been without fault on their part, the railroad company may properly be charged in the present actions.

The fact whether such a fence would have prevented the occurrence of the injury may be a difficult one for the jury to find, but the burden is on the plaintiffs to show this, and if they can establish it, the defendants may be held liable for the injury sustained. This is in conformity with the doctrine of this court as held in *Palmer* v. *Andover*, 2 Cush. 600.

The case of a horse being frightened is one of the cases of casualty which may and often does occur, and is entirely consistent with a reasonable degree of care and prudence on the part of the traveller. Such traveller has a right in case of such occurrence to the protection which such a fence as the law requires the railroad company to maintain would have given. If such a fence would have been unavailing, and the injury would still have occurred, the traveller cannot say his injury was occasioned by any neglect of the railroad company, and he must bear the loss ; but if otherwise, the liability attaches to the party bound to maintain the fence as an appendage to the bridge.

*Judgments on the verdicts.*