GEORGE H. STARRETT *vs.* INHABITANTS OF THOMASTON

GEORGE H. STARRETT *vs.* STATE HIGHWAY COMMISSION

Knox.    Opinion April 19, 1927.

*By the English law, the highway for a distance of 300 feet from the end of the bridge was considered as a part of the bridge, and in this country the highway at the end of the bridge may be considered as connected with the bridge.*

*As used in a statute providing for the building and rebuilding of bridges, the word "approach" means not only the structure itself but includes its approaches, abutements and bankments.*

*Where a bridge is raised "by a road commissioner or person authorized," such person may be authorized to act by agency or by operation of law.*

In the instant case, the Legislature provides that the State Highway Commission is to superintend and perform the work of building and rebuilding bridges. The town must be presumed to have known of this statutory provision and hence to know that if the work be done it must be done by the State Highway Commission. This makes the State Highway Commission a legal agency which by reasonable interpretation is broad enough to be included within the meaning of the expression "persons authorize."

On report. Two cases involving a claim for damages sustained by petitioner by reason of a change of grade in Main Street in Thomaston, in front of his place of business. The first complaint was filed

against the town of Thomaston under the provisions of R. S. Chap. 24, section 34, and the other complaint was filed against the State Highway Commission under the provisions of P. L. 1923, Chapter 193, known as the Bridge Act.    By Agreement both cases were reported to the Law Court.    Judgment for plaintiff in the first case and in the second case judgment for the defendant.

The cases are very fully stated in the opinion.

*Charles T. Smalley,* for petitioner.

*Rodney I. Thompson and Frank B. Miller,* for the Town of Thomaston.

*Raymond Fellows, Attorney General,* for the State Highway Commission.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, JJ., MORRILL, A.R.J.

PHILBROOK, J.    On the twenty-seventh day of July, 1924, the municipal officers of the town of Thomaston presented to the State Highway Commission and to the County Commissioners of Knox county a petition for state and county aid in the building or rebuilding of a bridge over Mill River in that town.    In that petition those municipal officers certified that public convenience and necessity required the building or rebuilding of the bridge, that it was located on a main travelled thoroughfare leading from Thomaston to Rockland, and locally known as the Main Street Road.    In their petition it was alleged that they were proceeding in accordance with the provisions of Chapter 319 of the Public Laws of 1915, as amended.

The last amendment of said chapter is to be found in Public Laws of 1923, Chapter 193, is commonly known and referred to as the Bridge Act, and was in effect when said petition was presented.

According to that last amendment it is provided that when the municipal officers of any town or city deem that any bridge on any main thoroughfare must be built or rebuilt, they may petition the commissioners of the county in which said bridge is, or may be built or rebuilt, and the State Highway Commission, to meet with them for the purpose of examining into and determining whether public convenience and necessity require the building or rebuilding of said bridge.    This petition is sent to the State Highway Commission and upon its receipt said Commission is required to transmit a copy there-

of to the county commissioners of the county in which the proposed work is to be done.

The petitioning municipal officers, together with the county commissioners and the State Highway Commission, then constitute a joint board to determine:   (a) whether or not the bridge is or may be built on a main thoroughfare;   (b) whether or not public convenience and necessity require the building or rebuilding of said bridge;   (c) to determine the type of construction and general dimensions;   (d) to determine the estimated cost of construction.    The decision of said board, or a majority thereof, upon any matter within its jurisdiction shall be final and conclusive, and the record of its findings upon all preliminary matters shall be prima facie evidence of the truth thereof.

The Bridge Act also provides for action by county commissioners, similar to that taken by municipal officers, when the bridge is to be built on any main thoroughfare in any unorganized township in the county.   Concerning this second method of procedure we are not here interested and offer no discussion.

A third method of procedure is prescribed when the bridge is to be built on any state or state-aid highway.   In that case, the moving party is the State Highway Commission which is required to notify the municipal officers of the town or city, or the county commissioners having jurisdiction of the roads in any unorganized township in which said bridge is located or may be built or rebuilt, and those three bodies form "a joint board having the same powers and prerogatives as the joint board formed in response to a petition emenating from the municipal officers of a town or city."

In the case at bar, acting upon the petition of the municipal officers as aforesaid, the regular legal steps were taken for the formation of the board, which board at the meeting required by statute, determined:   (a) that the proposed bridge "is on a main thoroughfare";   (b) "that public convenience and necessity require the reconstruction of this bridge."

The Bridge Act provides in section four that the State Highway Commission shall have supervision of all construction work done under that act.   Consequently, the work of construction upon this bridge was done under the supervision of that Commission.

The floor of the new bridge was constructed slightly higher than the floor of the old bridge, and in order to make convenient access

thereto the highway approaches to the bridge at each end were raised by filling.

The plaintiff owned and occupied land and buildings on the southerly side of the road, of which the bridge formed a part, and about eighty-five or ninety feet easterly from the bank of the stream over which the bridge was built.

The buildings were made of wood, the house being two and one half stories, the upper stories being used for dwelling purposes and the lower one as a place for conducting a general store. The barn was a two story frame building. There was a gasoline filling station in front of the store. In making said approaches to the bridge the filling station was removed, and the tracks of a street railway, located in the street in question, moved nearer to the plaintiff's buildings so that in its new location it partially covered the former location of the filling station. Prior to the moving of the street railway track there was sufficient space for an automobile to stop between that track and the filling station, to obtain gasoline, but after the moving this was impossible.

By reason of all these things the plaintiff claimed that he had sustained damage to his property, and on August 1, 1925, he made application in writing to the municipal officers of the town in which he alleged that the road commissioner of the town, or person or persons authorized, had raised the grade of the street in front of his property and prayed for the assessment of damages so sustained by him. On October 29, of the same year, he was notified by those municipal officers that his application had been duly considered and his damages determined in the sum of three hundred dollars. Being aggrieved by this assessment, on November 3, 1925, he presented a complaint to the Justice of the Supreme Judicial Court next to be holden at Rockland, praying the court to "determine the damages so as aforesaid sustained by him by reason of said change of grade of said street." This complaint was entered at the January term of said court and continued until the April term thereof.

Meanwhile, to wit on January 13, 1926, the plaintiff made application in writing to the State Highway Commission in which he alleged that this Commission had "altered and widened said street, and changed the grade of the same in front of his property" and prayed that the Commission would view his premises and assess the damages occasioned by the construction work done by the Commission. In

this petition the plaintiff declared that his damages amounted to three thousand dollars. No amount of damage was declared in his application to the municipal officers for their assessment of damages.

On January 20, 1926, the plaintiff was notified by the Commission that his application had been "duly received and considered", but it is alleged by the plaintiff that no damages were awarded thereunder.

On January 27, 1926, the plaintiff filed with the Commission his notice of appeal to the Supreme Judicial Court, which appeal was entered at the April term, 1926.

At the April term, therefore, both appeals were on the docket, one against the town and one against the Commission. As appears from the docket entries, which by agreement are made part of the record, certain men were "appointed commissioners to determine the amount of damage, and upon such determination both of the cases to go forward to the Law Court upon agreed statement or report as may be agreed upon by counsel for final determination of the liability of the parties and all questions of law."

The commissioners thus appointed assessed the damages "in either or both cases at three thousand one hundred and fifty dollars. ($3150.00.)"

The certificate of the sitting justice is that "by agreement of parties the above cases are reported to the law court upon so much of the evidence as is legally admissible; the law court to render final judgment therein."

## STARRETT *vs.* STATE HIGHWAY COMMISSION

Although the State Highway Commission is the nominal defendant in this case, yet the State of Maine is the actual defendant, since the Commission is simply the administrative arm of the State in matters of this kind. Under section nine of the Bridge Act it is expressly provided that the State shall not be liable to any person or corporation for damages arising from the construction or rebuilding, or improvement of any bridge built or rebuilt under the terms of that act. This language is broad and comprehensive. The Commission claims and the record shows, that all the work done at Mill Brook was done and paid for under the provisions of the Bridge Act, and that whatever change was made in front of the complainant's property was made by the joint board under the authority and provisions of that act, hence no liability against the State.

Under section three of the Bridge Act the State Highway Commission is required to prepare all engineering plans and specifications for materials, construction and workmanship which it considers necessary, not only for the bridge structure, but also for its approaches, and section two provides that the cost of construction shall include not only the complete cost of the bridge proper, but also such embankments, surfacing, and other work as it considers necessary to provide proper, adequate and safe approaches to the bridge. In the case at bar the approach to the bridge on its end toward the complainant's property, a distance of slightly less than one hundred feet, was part of the work of the State Highway Commission, and plainly within the intent of the legislature as part of the duties of that commission under the Bridge Act. Hence the provisions of R. S. Chap. 25, sec. 13, for alteration, widening, changing of grade, laying out and establishing, or discontinuance, of a state or state-aid highway, and assessment of damages by the Commission, have no application to the instant case.

In the complaint against the Commission we hold that there is no liability on the part of the State, or its administrative arm, the State Highway Commission.

### STARRETT *vs.* INHABITANTS OF THOMASTON

In this case the complainant instituted his proceeding under R. S. Chap. 24, sec. 84, which provides for assessment of damages sustained by an owner of adjoining land when a way or street is raised or lowered by "a road commissioner or person authorized, "which damages, after assessment, are to be paid by the town.

In argument counsel for the defendants frankly admits that the bridge was built under the provisions of the Bridge Act, but advances several contentions to show that the town is not liable in damages to the complainant. We will consider those contentions in the order presented by the defendant's brief.

1. That the record in the case is insufficient and leaves too much for inference; as for instance that the grade was made on a state highway.

In this state, under the provisions of R. S. Chap. 25, sec. 5, ways are classified into three groups: (1) state highways which shall mean a system of connecting main highways throughout the state; (2) state-aid highways which shall mean such highways not included

in the system of state highways as shall be thoroughfares between principal settlements or between settlements and their market or shipping-point and in so far as practicable feeders to the state highways; (3) third class highways which shall mean all other highways not included in the two classes above mentioned. *Bullard vs. Allen,* 124 Maine 251.

R. S. Chap. 25, sec. 5 also requires the State Highway Commission to cause charts and maps to be made showing the location and mileage of all highways of the state and classify the highways of the state into the three general classes which we have just mentioned. Such being the provision of law, is there any officer, commission, municipality or individual who better knows than the State Highway Commission as to whether a bridge is built or to be built on a state or state-aid highway? These questions are self-answering. Moreover, acting for the town, the municipal officers began these proceedings by address to the Highway Commission, in which they allege that the bridge was to be built on "a main traveled thoroughfare". If it were to be built on any other class of way would not the Highway Commission be fully cognizant of that fact, and being so would they be so indifferent to the situation as to stultify themselves by taking action upon the address of the municipal officers in a matter wherein those officers had no power to act? Such a question demands a negative answer. To a reasonable mind there could be no room for doubt that the action of the State Highway Commission determines by irresistible and conclusive inference that the bridge was not to be built upon a way other than that described in the address made to them by the town.

2. That the town had absolutely nothing to do with the construction of the bridge or the filling. Here again we turn to the Bridge Act and find that section four distinctly provides that the Highway Commission shall have supervision of all construction work and no payment shall be made on account of any of said work except by voucher approved by said Highway Commission. To be sure, under section three, when bids for doing the work are requested by the Commission, the town may submit a bid like any other contractor but if it submits the successful bid the town is subject to all requirements prescribed for other contractors, except that no bond need be required of it. In the case at bar it is undoubtedly true that the town had no part in performing the physical work of construction, but the

whole matter was set in motion by the action of the town through its municipal officers, and it ratified that action when it paid its proportion of cost of construction which was determined by the joint board as herein referred to, which payment is shown by the testimony of one of the municipal officers of the town.

3.    That the street railway track was moved nearer to the complainant's buildings, but by whose authority the record does not disclose.    The complainant does not even suggest that the track was moved to a new location upon his land.    If such were the case then he would have his remedy, for land so taken, under other provisions of statute, and against the street railway company which took his land.    But if the track was once legally located within the limits of the street, and its location was changed, still keeping within street limits, this complainant has no remedy for damages by reason of such change, *Parsons vs. Waterville & Oakland Street Railway*, 101 Main, 173.    The rights of the complainant or the liability of the town for damages are questions not affected by what was done in the instant case, so long as the track was still within street limits, and it is therefore immaterial as to the authority by which the track was moved, and being so it was unnecessary to aver the authority by which they were moved.

4.    How much of the fill was a portion of the bridge work, or, to use the words of counsel for the town, "what is a bridge?"    In the other case we briefly discussed the question of approaches being a part of the bridge structure under the Bridge Act, and repetition of what we there said is not necessary.    But apart from that discussion it is proper to call attention to some authorities as to what is included under the term "bridge".

By the English law the highway three hundred feet from each end of a bridge was considered as a part of the bridge for the purposes of repair, and in this country the highway at the end of a bridge may be considered as connected with the bridge.    *Titcomb vs. Fitchburg Railroad Co.*, 94 Mass. 254.

As used in a statute providing for the repair of bridges by county commissioners, the word "bridge" means not only the structure itself but includes its approaches, as well as its abutments, bankments and railways;    *The Driftwood Valley Turnpike Co. vs. County Commissioners*, 72 Indiana, 226.    In that case the statute required the county commissioners to cause all bridges therein to be kept in repair and

the question arose whether the approaches to such bridges were to be deemed parts of the same. The court said that upon that point there could be little or no doubt and answered the question in the affirmative.

Approaches to a bridge are whatever is necessary to connect the bridge with the public roads or streets, either at the end thereof, or to make such roads or streets conform to the grade of the bridge. *Township Committee of Kearney vs. Ballantine et als*, 23 Atl. 821; 54 N. J. Law 194.

Approaches to a bridge are the ways at the ends of it, which are a part of the bridge itself. By the common law the duty to keep a bridge in repair carried with it the duty to keep in repair, as a part of the bridge, the highway at each end of it, for a space of three hundred feet. This limit of space has not been adopted in Massachusetts but the highways at the ends of a bridge have been recognized as, and called, the approaches to it in several decisions: *Commonwealth vs. Deerfield*, 6 Allen, 449; *Titcomb, vs. Fitchburg Railroad*, 12 Allen, 259; *Rouse vs. Somerville*, 130, Mass. 361.

The term "bridge" includes not only the structure spanning the chasm over which it is erected but also includes the approaches by which access to the bridge is obtained, such approaches being as much a part of the appendages to the bridge as the bridge itself. Words and Phrases vol. I, p. 871 and numerous cases there cited.

In the instant case the way was a way at the end of a bridge and under the Massachusetts rule, which we adopt, may be called the approach to the bridge and hence included in the term "bridge."

5. That in the record there is no reason given why the Highway Commission failed to give damages, whether it was a jurisdictional question or otherwise. This contention may be considered as answered by what has been said in the previous case against that Commission.

6 That the award made by the municipal officers was wholly illegal and of no effect because under R. S. Chap. 24, sec. 84, no damages may be awarded unless the street was raised "by a road Commissioner or person authorized." A person may be authorized to act for another by reason of agency, or by reason of operation of law. Here the town set in motion a proceeding which resulted in raising a way. The proceeding was one in which the legislature had pre-

scribed certain conditions as to how and by whom the work should be done.

The town must be presumed to have known the law and hence to know that the work, if done, must be done by the State Highway Commission. Not by a "person" to be sure, but by a legal agency which by reasonable interpretation is broad enough to be included within the meaning of a "person authorized." Here again it must not be overlooked that the town ratified the proceeding by payment of its share of the cost of construction of the bridge. We cannot concede that there is effective merit in this contention.

Hence we hold that although the work was done by virtue of the provisions of the Bridge Act, yet the petition for and award of damages were properly presented under the provisions of R. S. Chap. 24, sec. 84 and that the legal liability for damages rests upon the town.

As the case stands before us we are to pass upon the question of legal liability and not upon questions of fact regarding the amount of liability. That amount was determined by a tribunal sought for by the town, in its appeal to the Supreme Court, and to the personnel of which the town agreed.

IN STARRETT *vs.* STATE HIGHWAY COMMISSION,

*Judgment for defendant.*

IN STARRETT *vs.* INHABITANTS OF THOMASTON,

*Judgment for plaintiff in accordance with the amount awarded by the commissioners appointed by the Supreme Court.*