Original,
No. 5329.

### J. WILLCOX BROWN *v.* STEWART LAMPREY *& a.*

Argued January 18, 1965.
Decided January 27, 1965.

122

*J. Willcox Brown*, pro se, orally.

*John C. Driscoll* (by brief and orally), as amicus curiae, in support of the bill.

*Wilfred L. Sanders, Jr.* (by brief and orally), for Robert F. Preston, and as amicus curiae, in support of the bill.

*Eugene C. Struckhoff* (by brief and orally), as amicus curiae, in support of the bill.

*Alfred Catalfo* (by brief) as amicus curiae, in support of the bill.

*Charles V. Spanos*, as amicus curiae, in support of the bill, filed no brief.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* by brief and orally), for the defendant Lamprey and for James A. Saggiotes.

*William Maynard*, Attorney General, pro se, and *Peter W. Smith* (by brief).

*William R. Johnson*, pro se, filed no brief.

*Arthur G. Marx*, counsel for the Senate, filed no brief.

DUNCAN, J. The motions of the defendants Lamprey and Maynard that the action brought by the plaintiff Brown be dismissed upon the ground that this court is without jurisdiction to review the judgments of the Senate in determining the elections, returns, and qualifications of its members, present the fundamental issue in this case. Other grounds advanced for dismissal, some of which arise out of the assertion that this is in the nature of a proceeding to try title to office, suggest procedural defects (see *Stickney* v. *Salem*, 96 N. H. 500) which might be thought capable of correction should circumstances require. *O'Brien* v. *Fuller*, 93 N. H. 221. The overriding issue of jurisdiction invites first attention.

The qualifications of a State Senator are prescribed by *Art.* 29, Part II of the Constitution. The qualification at issue with respect to each of the candidates apparently elected from districts 5, 8 and 23 is the requirement that he shall "have been an inhabitant of this state for seven years immediately preceding his election, and at the time thereof he shall be an inhabitant of the district for which he shall be chosen." *Art.* 29, *supra.* A person not so qualified is not "capable of being elected a senator." *Id.* Under *Art.* 30, Pt. II, a person is to be considered an "inhabitant" in the town "where he dwelleth and hath his home."

On January 6, 1965 the newly elected Senate assembled and organized, and thereafter undertook to determine whether Senators had been elected for districts 5, 8 and 23 who met the constitutional requirements quoted above. William R. Johnson of Hanover, nominee of both the Republican and Democratic parties and the only candidate for whom votes were cast in district 5, was found by the Senate to be qualified. James M. Lewis, a

Democrat, of Newport, who received the largest number of votes at the election in district 8, admittedly was not qualified because not an inhabitant of district 8 for the requisite period. He was found by the Senate not to be eligible and James A. Saggiotes, a Republican, of Newport, the candidate having the next highest number of votes was found to be the "only qualified candidate with a plurality of the votes." The Senate adjudged that Saggiotes was "entitled to represent District No. 8 in the Senate and that he be seated as such Senator." S. J. for Jan. 6, 1965, *pp.* 35, 36.

Similarly, Robert F. Preston, a Democrat, of Hampton was found not to be qualified, and Douglas E. Hunter, Sr., a Republican, also of Hampton was found to be "the only qualified candidate with a plurality of the votes" and was "adjudged entitled to represent District No. 23 in the Senate" and "seated as such Senator." S. J. Jan. 6, 1965, *pp.* 37-40.

In support of their motion to dismiss, the defendants rely upon *Art.* 35, Pt. II of the Constitution as follows: "The senate shall be final judges of the elections, returns, and qualifications, of their own members, as pointed out in this constitution."

In *Petition of Dondero*, 94 N. H. 236, 238, it was held that any review by the court of findings and rulings of the Ballot Law Commission regarding senatorial returns would be "of doubtful service to the parties and advisory only to the Senate . . . because our constitution makes the Senate a judicial body for the determination of the election of its members and, at least in the absence of a denial of due process of law, the decision is 'final.'"

It has been the established law in this state from the beginning that it is not the function of the judicial branch of the government to pass upon the wisdom, desirability and expediency of statutes enacted by the Legislature. *Chronicle &c. Pub. Co.* v. *Attorney-General*, 94 N. H. 148, 151. So too, this court has not been invested with the power to pass upon the wisdom of the legislative branch of the government in determining the qualifications of its members. Hence we have no authority to approve or disapprove the action thus taken by the Senate. For this court to interfere would be a usurpation of the authority of the Senate granted to it by the Constitution. *Art.* 35, *supra.* In the light of the precedents, we think it plain that this court is without authority to interfere with the Senate's determination that the candidate Johnson was qualified, and that the candidates

Lewis and Preston were not. See *McGee* v. *Bragg*, 94 N. H. 349.

The decision of the Senate to seat candidates in the 8th and 23rd districts who received fewer votes than the persons apparently elected but found ineligible is strenuously attacked by the plaintiff and supporters of his bill. In urging that special elections should be ordered in these districts, counsel have argued that they are required by *Art.* 34, Pt. II of the Constitution, which provides in substance that "vacancies in the senate arising . . . except from failure to elect, shall be filled by a new election by the people of the district," and in case of failure to elect shall be filled by election by the two houses of the Legislature "out of" the two persons having the highest number of votes in the district.

The defendants contend that *Art.* 34 cannot apply because no vacancies in the office of senator existed, the Senate having properly determined, as final judge of the elections and returns of their own members under *Art.* 35 that Saggiotes and Hunter were elected, "being the only qualified candidate[s] with a plurality of votes." See *Covington* v. *Buffett*, 90 Md. 569; *State* v. *Corley*, 36 Del. 135, 153.

In reaching this conclusion the Senate followed not only precedents which that body itself established in 1915 and 1941 (see S. J. (1915 Session) *p.* 18; S. J. (1941 Session) *pp.* 23-27), but also the precedent previously adopted by it in 1875 by which votes for disqualified candidates were rejected as not legally cast, for purposes of determining that other candidates had been elected by a "majority" of votes "legally" cast as then required by the article which in amended form is now Article 34.

Noting that the Senate had adjudged that Senators who received a majority "of all the votes legally cast" had been elected, the court declined to question this conclusion stating: "We are of opinion that from the action of the senate in this respect there can be no appeal. By the express terms of the constitution the action of the senate is made *final.* If the framers of our organic law had intended that some court or other tribunal should have the power, by writ of *quo warranto,* or *mandamus,* or other process, to reverse the action of the senate, they would have so expressed themselves, in language which could not be misunderstood." *Opinion of the Justices,* 56 N. H. 570, 573. To the same effect, see *Bingham* v. *Jewett,* 66 N. H. 382; *Eastman* v. *Jewett,* 66 N. H. 624. See also, *Opinion of the Justices,* 152

Me. 212; *Greenwood* v. *Registrars*, 282 Mass. 74; *Lessard* v. *Snell*, 155 Ore. 293.

For like reasons we are of the opinion that the occasion presented by the case before us is not one in which the court has authority to interfere. It may well be, as counsel have argued, that the practice of rejecting votes for disqualified candidates so as to effect the election of candidates having the second highest number of votes represents a minority view among court decisions elsewhere relating to elections not affected by constitutional provisions like those of Article 35. Under Article 35 however, the Senate acted in a judicial capacity as "final judges" of the elections. In so doing it did not exceed its authority by determining the applicable law as well as finding the controlling facts. *Greenwood* v. *Registrars, supra.*

In disposing of the pending bill we are restricted to the record of the proceedings in the Senate as reported by its journal. *Opinion of the Justices*, 103 N. H. 402, 411. The record discloses no such arbitrary and improvident use of its powers by the Senate as will constitute denial of due process of law calling for our intervention. In the circumstances we conclude that under Article 35, Part II, of the Constitution, the action taken by the Senate on January 6, 1965 is final and beyond the power of this court to approve or disapprove.

*Bill dismissed.*

All concurred.