The STATE of Wyoming ex rel. Larry
SCHIECK, Appellant (Peti-
tioner below),

v.

Stanley K. HATHAWAY and Thyra Thom-
son, Appellees (Respondents below).

Larry SCHIECK, Appellant
(Plaintiff below),

v.

Stanley K. HATHAWAY et al., Appellees
(Defendants below).

No. 3983.

Supreme Court of Wyoming.

Feb. 8, 1972.

William D. Bagley and John J. Rooney, of Rooney & Horiskey, Cheyenne, for appellant.

Sterling A. Case, Deputy Atty. Gen., Cheyenne, for appellees Stanley K. Hathaway and Thyra Thomson.

Byron Hirst, of Hirst & Applegate, Cheyenne, for appellee Dean T. Prosser, Jr.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

In this proceeding petitioner and plaintiff below, Larry Schieck, appellant herein, on December 23, 1970, filed his petition for writ of mandamus and complaint for injunction. It was claimed that Dean T. Prosser, Jr., as a defendant, appellee herein, was ineligible to serve in the house of representatives because he lacked the qualifications of such a member, not being a resident of Laramie County or the State of Wyoming. Defendants Stanley K. Hathaway and Thyra Thomson, appellees herein, were joined as governor and secretary of state because of certain statutory duties enjoined upon them in connection with elections. There was filed along with this

pleading a motion for temporary restraining order and no action thereon is reflected in the record. On December 24, 1970, an order to show cause was entered setting a hearing for preliminary injunction on December 30, 1970. The hearing was had, and on January 8, 1971, the court entered its decree denying the relief sought and dismissing the causes with prejudice. It is from that decree or judgment that appellant prosecutes this appeal.

In addition to the decree entered the trial court by memorandum dated January 6, *1970* (1971), made certain findings of fact and conclusions of law upon its own initiative and pursuant to Rule 52(a), W. R.C.P., which findings and conclusions are referred to in said judgment. The decree, however, made a general finding against appellant. An examination of this memorandum does not make clear the basis of the decision or decree. It concludes that appellant failed to establish grounds for injunctive relief and that the court has no jurisdiction. Other findings are made at some length that Prosser was a resident and entitled to serve as a legislator but that the first matter to be considered was that of jurisdiction. With that this court can have little quarrel. Further findings were made that appellant was not entitled to injunctive relief. The trial court apparently based its holding upon constitutional provisions, being Art. 3, § 10 and Art. 2, § 1, Wyo.Const.

It is the view of this court that if the proceedings were dismissed on jurisdictional grounds these other findings were outside the scope of the inquiry, which is also the view of the appellant. However, the court will in the disposal hereof examine the record in connection with the entitlement of the appellant to an injunction as well as the jurisdiction of the court in a matter of this kind because of the trial court's dual finding.

An examination of the pleadings discloses that at the time of the filing of this proceeding the appellees, Stanley K. Hathaway as governor and Thyra Thomson as secretary of state, had executed and sent to appellee Dean T. Prosser, Jr., a certificate of election. The sole relief which was sought as against appellee Hathaway was that he not send such certificate of election to Prosser. The matter was therefore completely moot at the time of the filing hereof as to appellee Hathaway as will be evidenced by authorities cited later in this opinion.

With reference to appellee Thomson, the sole remedy sought as against her was that she not include the name of Prosser on the next initial roll call of the house of representatives. Under our constitution this session of the legislature met on the second Tuesday of January 1971, and the court can take judicial notice that this has long since passed so that the remedy sought as against appellee Thomson is not applicable. The case of Belondon v. State ex rel. Leimback, Wyo., 379 P.2d 828, 829, expresses it clearly, wherein it is said:

> " * * * It is settled beyond question in this jurisdiction that when no judgment rendered can be carried into effect the cause is moot and will not be considered. [Citing Wyoming cases.] * * * "

See also State ex rel. Schwartz v. Jones, 61 Wyo. 350, 157 P.2d 993, 994, and the cases cited therein.

This leaves for examination the relief sought as against appellee Prosser that he be directed not to take an oath to perform the duties as a member of the house of representatives or to become a member thereof. It is apparent that the matter is moot insofar as the taking of the oath is concerned or "becoming a member thereof." If the court were to take a narrow view it might hold the matter to be moot as to Prosser but because of the provisions of Rule 54(c), W.R.C.P., could grant such relief to which appellant might be entitled even though it had not been demanded in the pleadings. It is to be noted that the term of Prosser in the house of representatives extends for two years and he is still a member thereof.

## THE ACTION WAS PREMATURE

■ The record reflects that appellant herein filed a notice of contest with the house of representatives dated December 29, 1970, which was apparently served upon appellee Prosser on that date. Appellant recognized thereby that the house of representatives had some power to determine the qualifications of its members and also recognized thereby that the said legislative body had made no determination of this matter at the date of filing of the petition and complaint. Stated simply, it would appear that this application for injunction was really for an order to prevent an act which might occur—dependent solely upon legislative action. Prosser could not have taken his legislative seat and acted as a legislator had the house of representatives determined that he did not have the qualifications to serve as such member. His seating was solely dependent upon the disposal made of the contest filed with them. There is a presumption that officials have properly performed or will properly perform their duties. State ex rel. Pearson v. Hansen, Wyo., 401 P.2d 954, 956; Campbell v. Wyoming Development Co., 55 Wyo. 347, 100 P.2d 124, 136, rehearing denied 102 P.2d 745; State ex rel. Irvine v. Brooks, 14 Wyo. 393, 84 P. 488, 491, 6 L.R.A.,N.S., 750, 7 Ann.Cas. 1108. Surely no court could or should issue an injunction to prevent an act or actions apparently feared by petitioner or speculated upon by him. Recognition of this rule has been set out in 42 Am.Jur.2d Injunctions, § 31, P. 767, as follows:

> "Courts cannot determine the rights of parties in advance of an actual existing controversy concerning them, and the power to grant injunctive relief is never exercised to allay mere apprehension of injury, or against something merely feared as liable to occur at some indefinite time in the future. * * *"

In Hall v. Elliott, 15 Wash.2d 518, 131 P. 2d 137, 138, this rule is succinctly set out:

> "Where injunctive relief is sought to prevent a threatened injury, it must be

one that is actual and material, and not merely possible, or doubtful, or contingent. * * *"

See further 43 C.J.S. Injunctions § 21, pp. 436–437, n. 60. The existence of a controversy involving present rights is also considered an essential element of jurisdiction. 1 Am.Jur.2d Actions, § 56, p. 587.

## THE COURT HAD NO JURISDICTION

■ The constitutional provisions governing a disposal hereof are set out as follows:

*Section 1, Art. 2, Wyo.Const.:*

"The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

*Section 2, Art. 3, Wyo.Const.:*

"* * * No person shall be a * * * representative * * * who is not a citizen * * * of this state and who has not, for at least twelve months next preceding his election resided within the county or district in which he was elected."

*Section 10, Art. 3, Wyo.Const.:*

"* * * the house of representatives shall elect one of its members speaker; each house shall choose its other officers, and shall judge of the election returns and qualifications of its members."

Appellant strongly urges that the case of Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235, is decisive and controlling in this case. Appellees just as strongly urge that the case of State ex rel. Sullivan v. Schnitger, 16 Wyo. 479, 95 P. 698, is decisive upon the question of the trial court's or any court's assuming jurisdiction of this controversy. As the result of some suggestions from argument to the court there is further examined the case of Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23

L.Ed.2d 491, with the belief that the same may have some bearing on the disposal hereof.

In State ex rel. Sullivan v. Schnitger, supra, it is to be observed there were a great many statements of general principles affecting jurisdiction of the courts to inquire into qualifications of a legislator. These have importance only as reflecting the general demarcation of authority as between courts and legislative bodies. The factual situation in this case involved a claim that members of an improperly reapportioned body which involved unequal representation affected the qualifications of those members to serve. The case held this was a power very clearly reserved for the legislative bodies themselves. This sheen has been rather dulled by the recent activities of courts, both federal and state, which no longer bridle at the thought of consideration of the validity of reapportionments of legislative bodies and have proceeded many times to actually reapportion legislatures since the decision of State ex rel. Sullivan v. Schnitger. There is, however, a declaration of the general rule that the exclusive right to judge the title to a legislative seat lies with that body.

Although appellant does not cite the Powell case in his brief and apparently does not rely upon it, this court considers that an examination of both the Bond and Powell cases is necessary for a proper disposal hereof. No attempt to indulge in a complete analysis or discussion thereof will be made, but actual distinctions only insofar as they appear applicable at this time will be set out which make them completely distinguishable from this proceeding.

First, both cases sound in declaratory judgment, which is neither asserted nor raised by brief or argument, nor was the lower court presented with any such request. Secondly, both cases involve acts of legislative bodies already and theretofore performed prior to the filing of the action. As mentioned before, at the time this proceeding was filed and at the time the hearing was had thereon it could only be conjectured and speculated that the house of representatives in judging the qualifications of its members would decide adversely to the asserted contentions of this petitioner. Thirdly, in the Bond case it appeared the Georgia legislature was directly in violation of the First Amendment of the United States Constitution in attempting to add indirectly qualifications in addition to those directly stated in the constitution. The Powell case, although decided on the basis it was an exclusion case, did hold that in judging qualifications, insofar as the exclusion of a representative was concerned, the legislative body was confined to those directly stated in the constitution. There is, however, a rather complete answer and distinction in the Bond case, in the view of this court, i. e., that the federal courts in that case were not faced with a bar such as the state court system faces under § 1, Art. 2, Wyo.Const. There was no question of separation of powers in that case, which is the very real question with which this court is involved, because the Bond case involved branches of different governments and sovereigns. This distinction was clearly set out by Mr. Justice Brennan in the case of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 706, 7 L.Ed.2d 663, on remand D.C.Tenn., 206 F.Supp. 341, which was also cited with approval in the Powell case:

"* * * it is the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question.'"

Mr. Justice Brennan, in Baker v. Carr, supra, does give us certain criteria which create or define a political question beyond the jurisdiction of the judiciary to determine, wherein he set out, 82 S.Ct. at 710:

"* * * Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; * * * or the impossibility of a court's

undertaking independent resolution without expressing lack of the respect due coordinate branches of government; * * * or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

These three of the above criteria establish this as a political question: There is a "textually demonstrable constitutional commitment of the issue to a coordinate political department"; there is the impossibility of the courts to take "independent resolution without expressing lack of the respect due" the state legislature; and there is certainly a clear possibility of "potentiality of embarrassment" herein had the trial court's attempted resolution of the residential qualification been different from that of the legislative body.

There is also a clear factual similarity of more importance to this case than was assigned in the briefs or arguments and that is the fact that in both the Bond and Powell cases the parties sought to be excluded or denied a seat were elected by the electors from districts they presumed to represent and were reelected in both cases. Prosser was elected from this county apparently by a large margin, and to overlook a factor of this sort is completely improper. This selection by the electors is suggested as an alternate reason for assuming jurisdiction in the case of Powell v. McCormack, it appearing in that opinion, 89 S.Ct. at 1977:

"* * * A fundamental principle of our representative democracy is, in Hamilton's words, 'that the people should choose whom they please to govern them.' 2 Elliot's Debates 257. As Madison pointed out at the Convention, this principle is undermined as much by limiting whom the people can select as by limiting the franchise itself. * * *"

Mention of this principle as being important is also made in several other places in that opinion. The importance of this is also noted in passing in Mr. Chief Justice Warren's opinion in Bond v. Floyd, 87 S. Ct. at 349, n. 13.

It is our opinion that insofar as the Powell case is concerned the concurring opinion of Mr. Justice Douglas appearing at 89 S.Ct. 1979–1980 is a better summarization and framing of the issues upon which disposal was made than can be done by this court or any text writer, wherein he said:

"* * * As the Court says, the important constitutional question is whether the Congress has the power to deviate from or alter the qualifications for membership as a Representative contained in Art. I, § 2, cl. 2, of the Constitution. Up to now the understanding has been quite clear to the effect that such authority does not exist. To be sure, Art. I, § 5, provides that: 'Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members * * *.' Contests may arise over whether an elected official meets the 'qualifications' of the Constitution, *in which event the House is the sole judge.* But the House is not the sole judge when 'qualifications' are added which are not specified in the Constitution." (Emphasis supplied.)

This case is authority applicable to this matter. It strongly appears that "the House is the sole judge."

In examination of two later cases from state jurisdictions we find much of interest in the case of Brown v. Lamprey, 106 N. H. 121, 206 A.2d 493. In that case there was involved the identical question herein presented except that the state senate of New Hampshire refused to seat two candidates from districts because of their lack of residential qualification involving in substance a requirement that the person should not be capable of being elected a senator unless he was an inhabitant of that district. Both candidates received a larger number of votes than their opponents but were found by the state senate to be unqualified because of their lack of residential qualification, and in both cases the

candidates receiving the next higher number of votes were seated as senators. The court in disposing of this matter observed, 206 A.2d at 495:

"It has been the established law in this state from the beginning that it is not the function of the judicial branch of the government to pass upon the wisdom, desirability and expediency of statutes enacted by the Legislature. [Citing case.] So too, this court has not been invested with the power to pass upon the wisdom of the legislative branch of the government in determining the qualifications of its members. Hence we have no authority to approve or disapprove the action thus taken by the Senate. For this court to interfere would be a usurpation of the authority of the Senate granted to it by the Constitution. Art. 35, supra [Pt. II, N.H.Const.]. In the light of the precedents, we think it plain that this court is without authority to interfere with the Senate's determination that the candidate Johnson was qualified, and that the candidates Lewis and Preston were not. * * *"

Another case of interest examined in this connection is Harrington v. Carroll, 428 Pa. 510, 239 A.2d 437. Although that case involves the provisions of the Philadelphia Home Rule Charter, the principles applied and relied upon for disposal are the same as involved in this case. It is also interesting because it was decided since the Bond case and the court considers the effect of the Bond case. The section involved herein provides that a councilman should be a resident of the city and that the council is the sole judge of the qualifications of its members. An injunction to prevent the seating of Kelly on the ground he was a nonresident was sought. The lower court denied the application and the appellate court observed in beginning its disposal of that matter in words that may be somewhat apropos in this case as follows:

"It is one of the striking phenomena of the legal world how there could be con-

troversy over so simple a declaration. * * *"

This immediately follows the statement that the council is the sole judge of its members' qualifications. Although counsel for the appellant in that case did not insist the Bond case was controlling, he did assert it established a new trend in the law. The court, in rejecting that argument, stated, 239 A.2d at 441:

"To argue that the right of the legislatures to determine the qualifications of its members is a wall which should be shattered is to maintain that representative government is on the way toward its own demolition. It is to prevent any such catastrophe that the United States and Pennsylvania Constitutions provide for courts, judges and law. And it is our duty, within the framework of those Constitutions, to defend that wall by upholding the sanctity of the system of constitutional separation of powers."

We can find little fault with this declaration.[1]

In our view the question of the qualifications of Prosser was not properly before the trial court and is therefore not proper for consideration by this court. It is not to be understood from this that we in any manner approve or disapprove of the finding of the house of representatives insofar as it determined Prosser's qualifications as a resident.

Affirmed.

McEWAN, Justice (concurring in the result).

I concur because under the circumstances of this case the result is correct, but I think we are not precluded in the future from examining similar questions which may come before us in a different manner.

While I think the opinion is clear as to what the issues in this case were, I want to record what I think the case did and did not decide. As the appellant said in his

1. For earlier cases reflecting this same view see Annotation, 107 A.L.R. 205, 208, et seq.

brief, the appeal was from the decision of the lower court. The decision of the lower court was handed down prior to any action having been taken by the legislature. Thus, the action of the legislature was not an issue in this case. As was noted in Justice Guthrie's opinion, both the *Bond* and *Powell* cases involved acts of legislative bodies performed prior to the filing of the actions. I believe the principles announced in those cases may have some application in actions involving legislative determination of qualifications such as residency. I am therefore convinced that the question of whether or not this court may, upon proper application, inquire into the legislature's determination of residency remains unanswered. Neither do I think that anything is said in the opinion which would preclude us from considering in the future whether or not we could examine the question of residency in an action brought to keep a nonresident off the ballot.

McINTYRE, Chief Justice (dissenting).

I simply cannot bring myself to agree the court does not have jurisdiction in this kind of case. To say so would leave unexplainable the actions of federal and state courts with respect to apportionment of legislatures, which is strictly a prerogative of the legislature under constitutional provisions. For that matter, if courts do not have jurisdiction in this kind of case, then it would be hard to understand how they declare acts of a legislature unconstitutional in any case. Legislation is a constitutional prerogative of legislatures, yet courts have always exercised the duty of declaring their acts unconstitutional when necessary.

In Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 1978, 23 L.Ed.2d 491 (1969), the United States Supreme Court rejected the contention that determination of a question pertaining to the right of one to sit in a legislative body would produce a "potentially embarrassing confrontation be-

tween coordinate branches" of government. The court expressly held such a determination falls within the traditional role accorded courts to interpret the law and does not involve a "lack of the respect due [a] coordinate [branch] of government." I fail to find better or more current authority.

Also, in Rodriguez v. San Antonio Independent School District, U.S.D.C.W.Tex. (three-judge court) 337 F.Supp. 280 (December 23, 1971), it was recently pointed out a court cannot act as a "super-legislature," but the judiciary can always determine that an act of the legislature is violative of the constitution.

I do not consider State ex rel. Sullivan v. Schnitger, 16 Wyo. 479, 95 P. 698 (1908), helpful to appellees, because the court actually considered at great length the merits of the apportionment question there involved. It decided that the legislature being questioned was an equitable and legal one and that mandamus should not issue. Nevertheless, I am pleased that Justice Guthrie puts at rest the matter of reliance on that case when he says its sheen has been rather dulled by the recent activities of courts, both federal and state, which no longer bridle at the thought of consideration of the validity of reapportionments of legislative bodies and have proceeded many times to actually reapportion legislatures, since the decision in State ex rel. Sullivan v. Schnitger, *supra*.[1]

A quotation out of context from Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 706, 7 L.Ed.2d 663, cannot support the proposition that courts lack jurisdiction in a case like the one before us. The *Baker* case is a landmark case for the proposition that courts will reapportion legislative bodies despite that being in the first instance a constitutional prerogative of legislatures.

Even if the *Baker* opinion were interpreted as holding that courts cannot pass on the right of a person to sit in a legislative body, such holding would be supersed-

1. See State ex rel. Whitehead v. Gage, Wyo., 377 P.2d 299, 301; and Schaefer v. Thomson, D.C.Wyo., 240 F.Supp. 247 (1964).

ed by the clear and unequivocal language used in the subsequent *Powell* case. There, the court clearly said such determination falls within the traditional role accorded courts to interpret the law and does not involve a "lack of the respect due [a] coordinate [branch] of government."

I hate to see the cases of Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235; and Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491, swept neatly under the rug as they are here, with the statement that they are distinguishable.

We can do all the distinguishing we care to, and it still remains a fact that it was clearly held in both cases that courts will review the action of legislative bodies when such bodies exclude a duly elected member for alleged lack of constitutional qualifications. If courts will review such action when a member is excluded for lack of a constitutional qualification, it follows, *a fortiori*, that courts will likewise review such action when a member is seated without the necessary constitutional qualifications.

There is a more serious consideration to the problem presented in this case. We ought not to say or imply, as the opinion of Justice Guthrie does, that the house of representatives made a determination of Prosser's qualifications as a resident. As Justice McEwan points out in his opinion, the decision of the district court was handed down prior to any action being taken by the legislature. That court held Prosser was a resident of Laramie County, Wyoming.

Thus, the ruling and decision of the district court was a caveat if not a binding determination of the law, and the only law at that time for the legislature to follow. We must assume the legislature acted as it did because of the court's holding on the question of residency and not by reason of an independent determination of its own.

Justice Guthrie now says the district court should not have made such a determination. Hence, the district court's hold-

ing on the matter of residency is now rendered void because it was an erroneous judicial determination. This leaves the matter of Prosser's residence entirely undetermined. If the trial court was wrong in doing what it did, and if that led to an erroneous assumption on the part of the legislature, we ought to correct it before Prosser is put to the expense of another election campaign.

The most disappointing thing about the Guthrie opinion is the absence of a determination of whether Prosser lives in Colorado or Wyoming. Justice McEwan makes it clear in his opinion that he considers that question still open for future determination in an appropriate action. Counsel on both sides of this controversy insisted strongly in oral argument that they wanted the question of residence determined by our court; and that they hoped the decision would not go off on an incidental issue.

I can only assume from the silence on the subject that a majority recognizes that the record shows Prosser, at all times here involved, to have been a bona fide resident of Colorado and not of Wyoming. That is my view of the record.

I go along with Justice McEwan in saying nothing decided by this court shall preclude a future examination of similar questions arising in a different manner; that the action of the legislature was not an issue in this case; that the principles announced in the *Bond* and *Powell* cases may have some application in actions involving legislative determination of qualifications such as residency; that the question of whether courts may, upon proper application, inquire into the legislature's determination remains unanswered; and that nothing is decided which would in the future preclude the courts from considering whether or not they can examine the question of residency in an action brought to keep a nonresident off the ballot.

If there be opinions by members of this court contrary to the conclusions of Justice

McEwan, with which I am concurring, such opinions cannot be said to represent a majority of the court.

Suppose the question of Prosser's residence is judicially determined in another suit such as one for a declaratory judgment; one to determine his right to vote in Laramie County; one to determine his right to be a candidate; a divorce suit; or a taxation suit, would anybody suppose in such event that the legislature, in a subsequent session, would be able to override this judicial determination? In other words, would anyone suggest the legislature could become a super-judiciary? If so, I would hate to think what this could begin to lead to.

The question of whether Prosser is a bona fide and legal resident of Colorado or Wyoming is clearly a judicial one, and I am sure members of the legislature expect it to be decided by the courts. It is unfortunate we are postponing that decision for a future case.